2006 UT App 303

**June W. Cox PETE, Plaintiff and Appellant,**

v.

**Dr. Robert L. YOUNGBLOOD, St. Mark's Hospital, John Does I–IV, and XYZ Corporations I–V, Defendants and Appellee.**

No. 20050268–CA.

Court of Appeals of Utah.

July 20, 2006.

John L. Collins and Brian L. Olson, Gallian Westfall Wilcox & Wright, St. George, for Appellant.

Elliott J. Williams and Carolyn S. Jensen, Williams & Hunt, Salt Lake City, for Appellee.

Before GREENWOOD, Associate P.J., McHUGH and ORME, JJ.

## OPINION

McHUGH, Judge:

¶ 1 June W. Cox Pete appeals from summary judgment in favor of Dr. Robert L. Youngblood on Pete's claim for medical malpractice based on Youngblood's alleged failure to remove gauze from a surgical site. Pete also challenges the trial court's refusal to allow her treating physician to testify as an expert witness when he was designated only as a fact witness during discovery and did not file an expert report under rule 26(a)(3) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 26(a)(3). Finally, Pete claims that the trial court abused its discretion by denying her untimely demand for trial by jury. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 In 1970, Pete was seriously injured when a horse fell on her during a race. The horse's saddle struck her head, causing extensive facial injuries. Pete was airlifted from Nevada to St. Mark's Hospital for treatment. Youngblood, a plastic surgeon, was on call and performed surgery on Pete to repair her fractured maxilla, nasal bones, orbit, mandible, and crushed sinus cavity. During the surgery, Youngblood wired together a number of bones and placed gauze in the surgical site for stability. Approximately two weeks later, Youngblood removed gauze and sutures. Although Pete saw Youngblood for three follow-up visits, no additional gauze was removed during these appointments.

¶ 3 Over the next thirty years, Pete suffered from persistent and painful sinus infections, swelling, and headaches. Despite treatment by her family physician and a specialist, Pete was unable to determine the cause of her ailments. In December 2001, when the area below her eye had swollen to the size of an egg, Pete consulted her dentist, Troy Savant, to explore whether the problem could be related to her teeth. Upon finding no abnormality with Pete's teeth, Savant lanced the infected portion of her cheek. A large amount of foul-smelling pus oozed from

the site. Savant then removed two five-inch pieces of gauze from Pete's cheek at the site of her 1970 surgery. Pete claims to have had no other surgery on her face since Youngblood's operation in 1970. After the gauze was removed, Pete's infection, pain, and headaches stopped.

¶ 4 On February 6, 2003, Pete filed a complaint alleging: "In the course of surgery, Defendant Youngblood was negligent in that he failed to exercise the degree of skill and care ordinarily exercised by physicians and surgeons in the City of Salt Lake, State of Utah, in that Defendant Youngblood negligently and carelessly left surgical gauze packing in Plaintiff's body."[1] Pete did not demand a jury trial and did not pay the statutory jury fee either with her complaint or within ten days of being served with Youngblood's answer.[2] *See* Utah R. Civ. P. 38(b). A little over four months later, on August 25, 2003, Pete filed an untimely jury demand. Youngblood opposed the jury demand on the basis that the right to jury trial had been waived. In response, on September 15, 2003, Pete filed a Motion for Jury Demand under Rule 39(b). *See id.* 39(b). The trial court denied the motion on October 28, 2003, stating that "[Pete] failed to demonstrate sufficient justification to persuade the [c]ourt to exercise its discretion pursuant to [r]ule 39(b), Utah Rules of Civil Procedure, to relieve her of that waiver [of the right to trial by jury]."

¶ 5 During the discovery phase, Pete designated several of her treating physicians as individuals likely to have discoverable information. She did not, however, designate any expert witnesses by the court-imposed deadline of February 20, 2004. Despite written discovery from Youngblood expressly requesting the names of Pete's experts, no witnesses were specifically designated as experts.

¶ 6 On September 29, 2004, Youngblood filed a motion for summary judgment, claiming that Pete had failed to state a prima facie case of medical malpractice because she had not designated an expert to opine as to the standard of care and breach. Pete's response was twofold. First, she offered an affidavit from one of her treating physicians, Dr. Paul Doxey, opining as to the standard of care. Second, Pete argued that no expert testimony was required because an inference of negligence was appropriate under the theory of *res ipsa loquitur*. Because Doxey had not been designated as an expert, the trial court struck the affidavit. The trial court then granted Youngblood's motion for summary judgment on the grounds that Pete had offered no expert testimony and because "after reviewing the record in this matter, the [c]ourt is not persuaded that the doctrine of *res ipsa loquitur* has any application." Pete filed this appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 First, Pete contends that it was error for the trial court to strike Doxey's expert affidavit even though he had been identified only as a fact witness under rule 26 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 26(a)(1)(A), (a)(3)(A). Interpretation of the Utah Rules of Civil Procedure is a question of law that we review for correctness. *See Goldberg v. Jay Timmons & Assocs.,* 896 P.2d 1241, 1242 (Utah Ct.App. 1995). We review the trial court's imposition of sanctions for failure to comply with those rules, including the exclusion of testimony, for an abuse of discretion. *See Featherstone v. Schaerrer,* 2001 UT 86, ¶ 31, 34 P.3d 194; *Tuck v. Godfrey,* 1999 UT App 127, ¶ 15, 981 P.2d 407.

¶ 8 Pete next challenges the trial court's entry of summary judgment in favor of Youngblood. "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Beltran v. Allan,* 926 P.2d 892, 895 (Utah Ct.App.1996) (citations omitted).

---

1. Pete also sued St. Mark's Hospital, but she voluntarily dismissed the hospital as a defendant on April 7, 2003.

2. Youngblood's answer was served on April 4, 2003, making Pete's jury demand due by April 17, 2003.

When reviewing summary judgment, we review the facts in the light most favorable to the losing party. Because summary judgment is granted as a matter of law, we review the trial court's ruling on legal issues for correctness. We determine only whether the trial court erred in applying the governing law and whether the trial court correctly held that there were no disputed issues of material fact.

*Id.* (quotations and citation omitted).

¶ 9 Finally, Pete argues that the trial court erred by denying her Motion for Jury Demand under Rule 39(b). *See* Utah R. Civ. P. 39(b). "[T]he granting or denial of a jury trial, in the absence of proper procedural requirements, is within the sound discretion of the trial court." *James Mfg. Co. v. Wilson,* 15 Utah 2d 210, 390 P.2d 127, 128 (1964); *see also Thompson v. Anderson,* 107 Utah 331, 153 P.2d 665, 667 (1944). We will not overturn the trial court's decision to deny an untimely jury demand absent an abuse of discretion. *See Aspenwood, L.L.C. v. C.A.T., L.L.C.,* 2003 UT App 28, ¶ 33, 73 P.3d 947.

### ANALYSIS

#### I. Use of Treating Physician as Expert

¶ 10 Pete argues that it was error for the trial court to strike Doxey's affidavit that Pete offered to establish the appropriate standard of care and to opine that Youngblood's conduct fell below that standard. The trial court excluded the Doxey affidavit because Pete did not identify him as an expert witness until after Youngblood filed his Motion for Summary Judgment. Pete first claims that Doxey is not a "retained expert" and therefore no expert designation was necessary. Pete also argues that she substantially complied with the requirements of Utah Rule of Civil Procedure 26 by identifying Doxey as a fact witness and providing copies of his medical records to Youngblood. *See* Utah R. Civ. P. 26. We address each of these arguments in turn.

#### A. Identification of Experts

¶ 11 Rule 26 of the Utah Rules of Civil Procedure requires the disclosure of three types of information relating to witnesses. *See id.* Rule 26(a)(1)(A) mandates that each party disclose the name, address, and telephone number of "each individual likely to have discoverable information supporting its claims or defenses." *Id.* 26(a)(1)(A). There is no dispute that Pete identified Doxey as a fact witness as required by this section. Rule 26(a)(3) relates to the disclosure of expert testimony and creates two distinct requirements: (1) disclosure of the identity of experts and (2) provision of an expert report. *See id.* 26(a)(3)(A)-(B).[3] Pete neither identified Doxey as an expert witness nor provided an expert report, contending that treating physicians are always exempt from the requirements of rule 26(a)(3). We disagree.

¶ 12 "A party shall disclose to other parties the identity of any person who may be used at trial to present evidence under [r]ules 702, 703, or 705 of the Utah Rules of Evidence." Utah R. Civ. P. 26(a)(3)(A).[4] Nothing in rule 26(a)(3)(A) limits the obligation to identify persons who may be used to give expert opinions. In contrast, rule 26(a)(3)(B) states:

> Unless otherwise stipulated by the parties or ordered by the court, this disclosure shall, *with respect to a witness who is retained or specially employed to provide expert testimony in the case* or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness or party.

Utah R. Civ. P. 26(a)(3)(B) (emphasis added). Thus, rule 26(a)(3) contemplates that all persons who may provide opinion testimony based on experience or training will be identified, but that only retained or specially employed experts are required to also pro-

---

**3.** Because the trial court's decision to strike the Doxey affidavit was based solely on the failure to designate Doxey as an expert under rule 26(a)(3)(A), we do not address whether Doxey was required to file an expert report under rule 26(a)(3)(B). *See* Utah R. Civ. P. 26(a)(3)(A)-(B).

**4.** Rules 702, 703, and 705 of the Utah Rules of Evidence relate to testimony by experts, the bases of opinion testimony by experts, and the disclosure of facts or data underlying expert opinion, respectively. *See* Utah R. Evid. 702, 703, 705.

vide an expert report. *See, e.g., Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 882–84 (5th Cir.2004) (holding that Federal Rule of Civil Procedure 26 requires all testifying experts to be identified but only mandates that written reports be filed for retained or specially employed experts); *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756–58 (7th Cir.2004) (same). Indeed, the rule itself recognizes that only some of the experts that must be identified will also be required to file a report: "A party may depose any person who has been identified as an expert whose opinions may be presented at trial. *If a report is required under Subdivision (a)(3)(B)*, any deposition shall be conducted within 60 days after the report is provided." Utah R. Civ. P. 26(b)(4)(A) (emphasis added). Therefore, if Doxey's affidavit was an attempt to provide evidence under rule 702, 703 or 705, *see* Utah R. Evid. 702, 703, 705, he should have been identified as an expert.

 ¶ 13 To the extent a treating physician simply provides a factual description of his or her personal observations during treatment, the testimony is not opinion evidence and no identification of the treating physician as an expert is required. In *Patel v. Gayes*, 984 F.2d 214 (7th Cir.1993), the United States Court of Appeals for the Seventh Circuit addressed this issue in the context of rule 26 of the Federal Rules of Civil Procedure. After a jury verdict in favor of the defendant doctor, the plaintiff appealed, arguing that two of his treating physicians were improperly prohibited from rendering expert opinions at trial. *See id.* at 217. As in this case, the treating physicians had been designated as fact witnesses, and the medical records they prepared while treating the

plaintiff had been produced. *See id.* at 217–18. The court affirmed the trial court's exclusion of the testimony, stating:

> The text of [Federal Rule of Civil Procedure] 26(b)(4) [5] would appear to require the disclosure of all persons who would provide expert testimony at trial. However, the Advisory Committee Notes and cases interpreting the rule apply a more narrow interpretation. Specifically, the Notes state that "the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness."

*Id.* at 217 [6] (quoting Fed.R.Civ.P. 26(b)(4)(A) advisory committee's notes).[7]

 ¶ 14 If, however, the treating physician also offers an opinion as to the standard of care or whether that standard has been breached, the testimony is no longer simply factual. "In order to determine if an expert need be identified before trial, [r]ule 26 focuses not on the status of the witness, but rather on the substance of the testimony." *Id.* at 218; *see also Hansen v. Cent. Iowa Hosp. Corp.*, 686 N.W.2d 476, 483 (Iowa 2004) ("Thus, even treating physicians may come within the parameters of [the Iowa version of rule 26] when they begin to assume a role in the litigation analogous to that of a retained expert."); *Smith v. Paiz*, 84 P.3d 1272, 1275–76 (Wyo.2004) ("[Treating physicians'] status depends on the content of their testimony: If they only testify as to what they observed and did within the physician-patient relationship, then they would be

5. The text of rule 26(b)(4)(A) of the Federal Rules of Civil Procedure, *see* Fed.R.Civ.P. 26(b)(4)(A), is nearly identical to that of rule 26(b)(4)(A) of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 26(b)(4)(A). Reliance on cases interpreting the Federal Rules of Civil Procedure is appropriate where the Utah and federal rules are "substantially similar." *Tucker v. State Farm Mut. Auto. Ins. Co.*, 2002 UT 54, ¶ 7 n. 2, 53 P.3d 947 (quotations and citations omitted). ·

6. In a subsequent decision, the Seventh Circuit suggests that even treating physicians who only testify as to the facts and circumstances relating

to that treatment must be identified as experts. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756–57 (7th Cir.2004). We need not address that issue here, because we conclude that Doxey's affidavit went beyond mere factual testimony.

7. Pete relies on the Advisory Committee Notes to the Federal Rules of Civil Procedure for her contention that there was no requirement to identify Doxey as an expert. *See* Fed.R.Civ.P. 26(a) advisory committee's notes to 1993 amendments.

fact witnesses; if, in addition to testifying to the facts, the treating physicians offered an opinion, then they would be expert witnesses."). Because the treating physician in *Patel* was asked to opine as to the general medical standard in the community, the Seventh Circuit affirmed the trial court's determination that this was "classic" expert testimony requiring disclosure of the treating physician as an expert witness. *Patel*, 984 F.2d at 218; *see also Thomas v. Consol. Rail Corp.*, 169 F.R.D. 1, 2 (D.Mass.1996) (requiring disclosure and an expert report where treating physician offered opinion on causation and prognosis); *Hansen*, 686 N.W.2d at 482 (stating that physician is not ordinarily required to formulate an opinion about the standard of care in treating a patient); *Smith*, 84 P.3d at 1277 (requiring disclosure and an expert report where treating physician offered opinion testimony on diagnoses, prognosis, and causation). "[A] treating physician who has formulated opinions going beyond what was necessary to provide appropriate care for the injured party steps into the shoes of a retained expert for purposes of [r]ule 26(a)(2)." *Thomas*, 169 F.R.D. at 2–3; *see also Washington v. Arapahoe County Dep't of Soc. Servs.*, 197 F.R.D. 439, 441–42 (D.Colo.2000).[8]

¶ 15 The Doxey affidavit offers testimony both as to the standard of care of otolaryngologists and plastic surgeons and also states that the standard was breached.[9] We therefore hold that Pete was required under rule 26(a)(3)(A) of the Utah Rules of Civil Procedure to identify Doxey as a person who may be used at trial to present expert testimony.

**B. Substantial Compliance with Rule 26(a)(3)(A)**

██ ¶ 16 Pete argues that even if she was required to identify Doxey as an expert, she

substantially complied with the requirements of rule 26(a)(3)(A) because Doxey was named as a fact witness and his records pertaining to Pete were delivered to Youngblood. Again, we disagree.

¶ 17 The Seventh Circuit rejected a similar argument in *Musser v. Gentiva Health Services*, 356 F.3d 751 (7th Cir.2004), stating:

The [plaintiffs], however, contend that they did comply with [r]ule 26(a)(2)(A) [10] because [defendant] was in fact made aware of the identity and records of all of their witnesses, and [defendant] had an opportunity to depose these witnesses as to their opinions. The [plaintiffs] assert that it would be a pointless formality to disclose in writing a list of names of persons already known to [defendant] through prior discovery, this time with the designation "expert witness." The Federal Rules of Civil Procedure, however, demand this formal designation. . . .

. . . .

*Formal disclosure of experts is not pointless. Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial.* . . . The failure to disclose experts prejudiced [defendant] because there are countermeasures that could have been taken that are not applicable to fact witnesses, such as attempting to disqualify the expert testimony . . ., retaining rebuttal experts, and holding additional depositions to retrieve the information not available because of the absence of a report. In sum, we agree with the district court that even treating physicians and treating nurses must be designated as experts if they are to provide expert testimony.

---

**8.** We disagree with Pete that *Boice v. Marble*, 1999 UT 71, 982 P.2d 565, mandates a different result. There, the parties expressly reserved in their expert designations the right to "call as experts any of [plaintiff's] treating physicians." *Id.* at ¶ 12. Under the unique facts of that case, the Utah Supreme Court held it was error to exclude the opinion testimony of the treating physician. *See id.*

**9.** Doxey's affidavit states: "I am familiar with the standard of care required of physicians and surgeons generally, and of otolaryngologists and

plastic surgeons specifically, in this and similar communities. . . . Failure to remove surgical gauze is a breach of the standard care for plastic surgeons practicing in this and similar communities."

**10.** Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure, *see* Fed.R.Civ.P. 26(a)(2)(A), is substantially similar to rule 26(a)(3)(A) of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 26(a)(3)(A).

*Id.* at 757–58 (emphasis added) (citations omitted); *see also Hamburger v. State Farm Mut. Auto. Ins. Co.,* 361 F.3d 875, 883 (5th Cir.2004) (stating that although defendant was in possession of treating physician's medical records, those records did not alert defense that physician intended to give an opinion on causation). We agree that the manner in which discovery is conducted concerning a fact witness and an expert is quite different. If Pete intended to call Doxey to offer an opinion as to the standard of care or whether that standard had been breached, Youngblood was entitled to notice as required by Utah Rule of Civil Procedure 26(a)(3)(A).

¶ 18 Because we conclude that Pete did not comply with the requirements of rule 26(a)(3)(A), we also hold that the trial court did not abuse its broad discretion by striking the Doxey affidavit.[11] *See Arnold v. Curtis,* 846 P.2d 1307, 1310 (Utah 1993) (holding that trial court did not err in excluding affidavit of physician not designated as a witness by deadline in scheduling order);[12] *cf. State v. Arellano,* 964 P.2d 1167, 1169–71 (Utah Ct. App.1998) (holding that even though defense may have known substance of the expert testimony, defense was entitled to a continuance because prosecution did not give proper notice of its intent to call expert as a witness).

## II. *Res Ipsa Loquitur*

¶ 19 Pete argues that, even if the Doxey affidavit was properly excluded, summary judgment should not have been granted because no expert testimony is required under the facts of this case. We agree.

### A. Application of the Doctrine

¶ 20 In a medical malpractice action, the plaintiff must establish that the physician performed below the applicable standard of care, proximately causing injury to the plaintiff. *See Robb v. Anderton,* 863 P.2d 1322, 1327 (Utah Ct.App.1993). Typically, the standard of care and the defendant's breach of that standard must be established through expert testimony. *See Nixdorf v. Hicken,* 612 P.2d 348, 352 (Utah 1980). The courts of this state, however, have long recognized an exception to this requirement: "Specifically, expert testimony is unnecessary to establish the standard of care owed the plaintiff where the propriety of the treatment received is within the common knowledge and experience of the layman. *The loss of a surgical instrument or other paraphernalia, in the operating site, exemplifies this type of treatment.*" *Id.* (emphasis added) (reversing directed verdict in favor of defendant on ground that no medical expert is needed to establish that leaving needle in patient is below the standard of care); *see also Dalley v. Utah Valley Reg'l Med. Ctr.,* 791 P.2d 193, 197, 200 (Utah 1990) (reversing summary judgment on ground that no medical expert was needed to establish that burn from heating pad during surgery is below standard of care); *Baczuk v. Salt Lake Reg'l Med. Ctr.,* 2000 UT App 225, ¶ 11, 8 P.3d 1037 (same).

¶ 21 In *Fredrickson v. Maw,* 119 Utah 385, 227 P.2d 772 (1951), the Utah Supreme Court considered a case with facts quite similar to those present here. Plaintiff alleged that the defendant physician was negligent because he "carelessly left gauze, dressings, threads, and sutures in the tonsil cavity" after a tonsillectomy. *Id.* at 772. After the trial court entered judgment for the plaintiff, the defendant appealed, claiming that he was entitled to nonsuit because no evidence showed that the surgery was performed negligently. The court disagreed, holding that "when facts may be ascertained by the ordinary use of the senses of lay witnesses, it is not necessary that expert testimony be produced and relied upon." *Id.* at 773.

---

11. Pete complains that the trial court did not also strike the Youngblood affidavit providing counter opinions on the standard of care and breach despite the fact that Youngblood also had not been designated as an expert witness. Upon review of the record, however, we can find no indication that a Motion to Strike was filed challenging the Youngblood affidavit.

12. Our decision on this issue is in the context of the appeal before us, and we do not intend to limit the trial court's authority to make different decisions as it deems appropriate in managing the discovery and trial of this case on remand.

¶ 22 In such cases, the doctrine of *res ipsa loquitur* operates to establish that the standard of care has been breached. *See Nixdorf*, 612 P.2d at 352. *Res ipsa loquitur* is an evidentiary doctrine that arises when the plaintiff can establish that

(1) ... [t]he accident was of a kind which in the ordinary course of events, would not have happened had the defendant(s) used due care, (2) the instrument or thing causing the injury was at the time of the accident under the management and control of the defendant, and (3) the accident happened irrespective of any participation at the time by the plaintiff.

*Dalley*, 791 P.2d at 196 (quotations and citation omitted). Pete has established the elements necessary to support a claim of medical malpractice based on the doctrine of *res ipsa loquitur*.

The failure of a surgeon to remove a foreign object from the body of a patient following the use of that object during an operation constitutes one of those occasions where, by reason of the very nature of the omission, courts have applied res ipsa loquitur. *It is a matter of common knowledge that due care is lacking if surgical instruments, sponges, or medical supplies are not removed before an incision is closed or a wound heals. Lack of direct evidence by an expert witness of failure to remove is not fatal to a patient's case when there is evidence from which an inference to that effect may legitimately be drawn.*

B.Y.U. J. Legal Stud., *Summary of Utah Law: Unintentional Injuries to Persons and Property* § 18.73 (Jerry D. Fenn et al. eds., 1984) (emphasis added) (footnote omitted); *see also Nixdorf*, 612 P.2d at 352 ("If, however, a surgeon should lose the instrument with which he operates in the incision ..., it would seem as a matter of common sense that scientific opinion could throw little light on the subject." (omission in original) (quotations omitted)).

¶ 23 Pete alleges that Youngblood neglected to remove gauze from the surgical site after her facial surgery. The gauze was under the management and control of Youngblood, Pete was unconscious and unable to participate, and failing to remove surgical supplies would not happen in the ordinary course of events in the absence of negligence. "The very purpose of the doctrine of res ipsa loquitur is to allow a plaintiff who may have been unconscious or incapacitated during an operation the opportunity to establish negligence and causation by circumstantial evidence." *Dalley*, 791 P.2d at 197.

¶ 24 Furthermore, Youngblood's argument that the gauze could have been left in the absence of negligence does not defeat application of the doctrine.[13]

While we will not say the act of the defendant in losing the [gauze] was negligent as a matter of law, the bad result, i.e., the [gauze] present in the body of the plaintiff, is such that people would know from common knowledge and experience it is more probably than not the result of negligence.

*Nixdorf*, 612 P.2d at 353. Under the facts of this case, Pete was entitled to a "rebuttable inference of negligence" under the doctrine of *res ipsa loquitur* that the failure to remove gauze from the site was "more probably than not the result of negligence." *Id.* at 353–54. Youngblood may offer evidence to rebut that inference, but Pete should have been permitted to have the matter decided by the trier of fact. *See Loos v. Mountain Fuel Supply Co.*, 99 Utah 496, 108 P.2d 254, 258 (1940) ("[I]t is the province of the fact finder (the jury or the court where no jury is sitting) to draw or to reject such an inference [of negligence based on *res ipsa loquitur*]."); *Zoccolillo v. Oregon Short Line R. Co.*, 53 Utah 39, 177 P. 201, 210 (1918) (rejecting argument that if *res ipsa loquitur* applies, plaintiff need only prove damages).

B. Failure to Plead

¶ 25 Youngblood also argues that Pete cannot rely on *res ipsa loquitur* because she did not plead it in her complaint. We disagree.

13. Youngblood argues that the gauze could have caught on the wires used to reconstruct Pete's facial bones and that only subsequent complaints from Pete would have alerted Youngblood to their presence in the surgical site.

¶ 26 Youngblood relies on *Loos v. Mountain Fuel Supply Co.*, 99 Utah 496, 108 P.2d 254 (1940), for the proposition that the doctrine of *res ipsa loquitur* must be pleaded expressly in the complaint. We do not read that case as restrictively as Youngblood. Loos obtained a jury verdict for damages incurred as a result of an explosion under a cabin owned by Utah Motor Park and supplied with natural gas by Mountain Fuel. *See id.* at 256. The complaint alleged a specific theory based on enumerated facts explaining how each defendant was negligent. *See id.* The complaint did not allege and the jury was not instructed as to the possibility of an inference of negligence based on *res ipsa loquitur*. *See id.* at 258. On appeal, the Utah Supreme Court agreed with defendants that there was insufficient evidence to support the allegations of specific negligence. *See id.* As to Utah Motor Park, however, the *Loos* court concluded that the doctrine of *res ipsa loquitur* could have been invoked. *See id.* Nevertheless, it rejected plaintiff's argument that the doctrine could be applied at the appellate level to affirm the decision of the jury because only allegations of specific negligence had been raised during trial. *See id.* at 258–59.

> In some cases *where specific acts of negligence are alleged in the complaint* the specific allegations of violation of duty can be ignored and the pleadings still show a cause of action based on res ipsa loquitur. Nevertheless we think one who wishes to rely on that doctrine, *as well as specifically assigned acts of negligence,* must so plead, either by a separate count *or by proper allegation to the effect that the negligence to be inferred from the general situation caused the injury,* thereby notifying the other party that he intends to rely on the doctrine of res ipsa loquitur. To set out by way of inducement a situation which itself may bespeak a prima facie case of negligence *and then follow with allegations of specific negligence* and allege that by reason of such negligent acts or omissions on the part of the defendant

[referring to those specifically alleged] the plaintiff was injured, etc., does not sufficiently put the defendant on notice that the plaintiff is going to rely on the situation itself to furnish any inference of negligence.

*Id.* at 259 (emphasis added) (alteration in original) (quotations and citation omitted).[14] Consequently, the *Loos* court reversed and remanded for retrial, after appropriate amendment of the pleadings, on the issue of *res ipsa loquitur*. *See id.*

¶ 27 In contrast, Pete made only *general* allegations of negligence in the complaint at issue, alleging simply that Youngblood inserted gauze, it was found in the site thirty years later, and the failure to remove it was negligent. In addition, Pete did not wait until after trial to request application of the doctrine. Finally, and perhaps most importantly, after *Loos* was decided, Utah adopted the Rules of Civil Procedure that embrace the concept of notice pleading. *See* Utah R. Civ. P. 8(a) (requiring that complaint contain a "short and plain statement of the claim"). Although certain claims and defenses must be pleaded expressly or with specificity, *res ipsa loquitur* is not one of them. *See* Utah R. Civ. P. 8(c), 9(b). Under the present facts, we do not believe *Loos* would prohibit application of the doctrine of *res ipsa loquitur*.

▇▇ ¶ 28 This narrow reading of *Loos* is consistent with the later decision of the Utah Supreme Court in *Joseph v. W.H. Groves Latter–Day Saints Hospital*, 10 Utah 2d 94, 348 P.2d 935 (1960). At the conclusion of the evidence in that case, plaintiff moved for the jury to be instructed on the doctrine of *res ipsa loquitur*. *See id.* at 936. The trial court denied the motion on the ground that the doctrine had not been pleaded in the complaint. *See id.* The Utah Supreme Court disagreed that express pleading of *res ipsa loquitur* was necessary but affirmed on other grounds, stating:

> Conceding the plaintiffs' argument that under proper circumstances *neither the fail-*

14. The complaint in *Loos* alleged that "appellants were negligent in that they excavated the hole in which the gas furnace was installed in such a manner that the walls of the cabin later settled and rested on the gas pipes fe[e]ding to the gas furnace causing them to break and leak." *Loos v. Mountain Fuel Supply Co.,* 99 Utah 496, 108 P.2d 254, 256 (1940).

ure to *expressly plead res ipsa loquitur,* nor the fact that specific acts of negligence are proved *would preclude the submission of the case on that doctrine,* we proceed to consider the more fundamental proposition: whether the evidence here would have justified submission of the case upon that theory.

*Id.* (emphasis added) (footnotes omitted); *see also Roylance v. Rowe,* 737 P.2d 232, 235 (Utah Ct.App.1987) ("This jurisdiction has long held that a case presented to the jury on specific theories of negligence does not preclude an instruction on a theory of *res ipsa loquitur.*"). The concession made in *Joseph* is also consistent with the overwhelming weight of authority from other jurisdictions that hold the doctrine of *res ipsa loquitur* is a rule of evidence rather than a cause of action and need not be pleaded in the complaint. *See, e.g., Knight v. Otis Elevator Co.,* 596 F.2d 84, 90 (3d Cir.1979) (stating that *res ipsa loquitur* is a rule of evidence and need not be pleaded); *Andrews v. Forness,* 272 A.2d 672, 673 (D.C.1971) (same); *Boersma v. Amoco Oil Co.,* 276 Ill.App.3d 638, 213 Ill. Dec. 152, 658 N.E.2d 1173, 1181 (1995) (same); *McKee Elec. Co. v. Carson Oil Co.,* 301 Or. 339, 723 P.2d 288, 293 (1986) (same); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1249 n. 23 (3d ed.2004).

¶ 29 We are also unpersuaded that *Elg v. Fitzgerald,* 547 P.2d 202 (Utah 1976), mandates a different result. There, the plaintiff's own counsel conceded that *res ipsa loquitur* did not apply and the inference was unnecessary because "there was a full opportunity to develop the facts." *Id.* at 203 (holding that plaintiff had opportunity to examine witnesses and allegedly defective wagon after hay ride resulted in injuries). *Roylance v. Rowe,* 737 P.2d 232 (Utah Ct.App.1987), can be distinguished for the same reason. Roylance sued his physician because a second surgery was performed to recover a sponge thought to have been inadvertently left in the surgical site during a prior surgery. *See id.* at 234. When it was discovered that the sponge had actually been removed, Roylance sued for malpractice, contending that the second surgery was unnecessary. *See id.* This court held that *res ipsa loquitur* is

"premised on the plaintiff's inability to produce evidence identifying the precise negligent act or omission on the part of a defendant which caused the harm." *Id.* at 235. Because the "evidence in the case reveal[ed] all of the facts and circumstances of the [miscount of sponges] and clearly establish[ed] the precise allegedly negligent act which is the cause of plaintiff's injury," there was no need for an inference of negligence. *Id.*

¶ 30 Here, Pete knows only that the gauze was still in the surgical site thirty years after the facial surgery performed by Youngblood. Unlike *Elg* and *Roylance,* the allegations do not reveal the precise negligent act that caused the injury, and an inference of negligence is appropriate. *See King v. Searle Pharms., Inc.,* 832 P.2d 858, 862 (Utah 1992) ("A classic example [of when *res ipsa loquitur* should apply] is leaving a foreign object in a patient's body during surgery."). We therefore conclude that Pete is not precluded from relying on the doctrine of *res ipsa loquitur* at trial. Accordingly, no expert testimony was required and the trial court improperly granted summary judgment in favor of Youngblood.

### III. Untimely Jury Demand

¶ 31 Because we reverse the order granting summary judgment, we must also address Pete's argument that the trial court abused its discretion in denying her untimely motion for trial by jury. Rule 38 of the Utah Rules of Civil Procedure provides that any party may demand a trial by jury "by paying the statutory jury fee and serving upon the other parties a demand therefor ... not later than 10 days after the service of the last pleading directed to such issue." Utah R. Civ. P. 38(b). The failure to pay the statutory fee or to serve a timely jury demand constitutes a waiver of trial by jury. *See id.* at 38(d). There is no dispute that Pete did not make a jury demand or pay the jury fee within ten days of service of Youngblood's answer. Consequently, Pete waived her right to trial by jury. *See James Mfg. Co. v. Wilson,* 15 Utah 2d 210, 390 P.2d 127, 128 (1964) ("It appears that defendant did not make a demand for a jury as provided in

[r]ule 38 [of the Utah Rules of Civil Procedure], which states that if a party does not conform to its requirements, a jury trial as a matter of right is waived.").

¶ 32 After failing to demand a jury, Pete filed a motion under rule 39(b) asking the trial court to exercise its discretion and allow trial by jury despite Pete's waiver. Rule 39(b) states:

> Issues not demanded for trial by jury as provided in [r]ule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its *discretion* upon motion may order a trial by a jury of any or all issues.

Utah R. Civ. P. 39(b) (emphasis added). The trial court denied the motion. Pete contends that, in the absence of a showing of prejudice by Youngblood, the denial of a motion for jury trial under rule 39(b) is an abuse of discretion. We disagree.

¶ 33 Nothing in Utah's jurisprudence *requires* a court to exercise its discretion under rule 39(b) to allow an untimely jury demand unless prejudice is palpable. *See James Mfg.,* 390 P.2d at 128 (granting or denying a request for jury trial under rule 39(b) is "within the sound discretion of the trial court"); *see also Hunter v. Michaelis,* 114 Utah 242, 198 P.2d 245, 247 (1948). In *Thompson v. Anderson,* 107 Utah 331, 153 P.2d 665 (1944), the court explained:

> Since it is a matter of discretion with the court to allow or refuse a demand for a jury when not made within the statutory time, ... it follows that it would also be discretionary for the court to refuse demand for a jury which did not come within an extended time provided by court rule. *Nor is it an abuse of discretion to fail to grant demand for a jury trial when made late if no excuse is shown for the failure to make a demand within the time allowed by statute.*

*Id.* at 667 (emphasis added) (citations omitted); *see also Bennion v. Hansen,* 699 P.2d 757, 758–59 (Utah 1985) (finding no abuse of discretion in denying jury demand that was untimely by four days); *Board of Educ. v. West,* 55 Utah 357, 186 P. 114, 116–17 (1919) (finding no abuse of discretion in denying untimely jury demand in absence of some excusable reason for failure to comply with statute).

¶ 34 Here, Pete argues that the failure to make a timely jury demand was not a result of inadvertence. Instead, Pete claims that she intended to file the demand within ten days of the answer from St. Mark's Hospital, but that discussions between St. Mark's and Pete resulted in the dismissal of that claim. She argues that under these circumstances, the trial court was required to exercise its discretion under rule 39(b) and permit trial by jury. We disagree that the discussions with St. Mark's created a justifiable excuse for failing to make a timely jury demand. The Utah Supreme Court rejected a similar argument in *Thompson,* upholding the trial court's refusal to allow trial by jury where the defendant claimed the jury demand was untimely because of settlement discussions between the parties. *See* 153 P.2d at 667; *cf. Bennion,* 699 P.2d at 758–59 (rejecting excuse that deadline for filing jury demand fell on a Sunday).

¶ 35 We are likewise unpersuaded by Pete's reliance on *Megadyne Medical Products v. Aaron Medical Industries,* 170 F.R.D. 28 (D.Utah 1996). In that case, the magistrate granted the plaintiff's request for a jury trial under the federal version of rule 39(b), *see* Fed.R.Civ.P. 39(b), stating that "absent strong and compelling reasons to the contrary a district court should exercise its discretion under [r]ule 39(b) and grant a jury trial." 170 F.R.D. at 29 (quotations and citation omitted). In reviewing a trial court's decision to deny an untimely jury demand on appeal, however, the United States Court of Appeals for the Tenth Circuit clarified that no abuse of discretion would be found where the failure to make a timely jury demand was due to inadvertence:

> This court has held that, absent strong and compelling reasons to the contrary, a district court should exercise its discretion under [r]ule 39(b) and grant a jury trial.... Consistent with that guiding principle, *we hold today that it would not be an abuse of discretion to deny relief pursuant to [r]ule 39(b) when the failure to make a*

*timely jury demand results from nothing more than the mere inadvertence of the moving party.*

*Nissan Motor Corp. in U.S.A. v. Burciaga,* 982 F.2d 408, 409 (10th Cir.1992) (per curiam) (emphasis added) (citation omitted) (rejecting excuse that defendant believed plaintiff had already made a jury demand as mere inadvertence). Under the circumstances of this case, we cannot say that the trial court abused its discretion in denying Pete's untimely jury demand.[15]

## CONCLUSION

¶ 36 The trial court was correct in holding that a treating physician who intends to offer an opinion on the standard of care and whether that standard has been breached must be designated as an expert under rule 26(a)(3)(A) of the Utah Rules of Civil Procedure. And, because Pete did not designate Doxey as an expert, the trial court could properly exclude his affidavit. The facts of this case support an inference of negligence under the doctrine of *res ipsa loquitur,* and therefore summary judgment in favor of Youngblood was improperly granted. Finally, the trial court did not abuse its discretion in denying Pete's untimely jury demand.

¶ 37 Affirmed in part and reversed in part.

¶ 38 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and GREGORY K. ORME, Judge.

---

15. *See* footnote 12.