**2025 UT App 81**

# THE UTAH COURT OF APPEALS

ASLAN LOMSANIDZE,
Appellee,
*v.*
MEKHTI MUSAYEV,
Appellant.

Opinion
No. 20231113-CA
Filed May 30, 2025

Third District Court, Salt Lake Department
The Honorable Laura Scott
The Honorable Barry G. Lawrence
No. 170908230

David O. Drake, Attorney for Appellant

Aslan Lomsanidze, Appellee Pro Se

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

OLIVER, Judge:

¶1     Aslan Lomsanidze brought conversion, theft by deception, unjust enrichment, and breach of contract claims against Mekhti Musayev after he discovered Musayev had been making unauthorized withdrawals from and unknown deposits into Lomsanidze's bank account. Almost seven years after Lomsanidze's initial complaint was filed, a bench trial was held. The trial court found that Musayev breached his contract with Lomsanidze and was liable for $82,687.87 in damages. Musayev now challenges multiple rulings by the trial court. Because we find no merit to his arguments, we affirm.

BACKGROUND[1]

*Lomsanidze and Musayev's Contract*

¶2     Lomsanidze emigrated to the United States from Russia in 2005 and is unable to read, write, or speak in English with any degree of competency. He was an experienced autobody repairman in Russia and worked as an autobody repairman after moving to the United States. In 2011, Lomsanidze opened his own autobody shop.

¶3     After opening his shop, Lomsanidze's friend, Musayev, began to bring Lomsanidze cars to repair. Musayev speaks both English and Russian. Musayev was a member of Autobuysale, LLC (Autobuysale), an entity that repaired and sold cars, along with two other members. Though all three members of the LLC shared the same lot and business name and paid utilities and rent together, each member would purchase his own cars and work with different body shops to repair the cars and sell them.

¶4     In August 2012, Lomsanidze approached Musayev and asked if Musayev would buy cars for him "so he could earn some extra money" by repairing and selling them. Musayev agreed as long as Lomsanidze promised not to tell the other Autobuysale members about the arrangement. The following year, Musayev helped Lomsanidze open his own account at a credit union (the Account). Lomsanidze designated Musayev as "an authorized user" of the Account, which allowed Musayev to "transfer money in and out of the [A]ccount." After opening the Account, the parties entered into an oral agreement whereby Musayev would purchase cars at auction for Lomsanidze using money from the

---

1. "Following a bench trial, we recite the facts from the record in the light most favorable to the findings of the trial court and present conflicting evidence only as necessary to understand issues raised on appeal." *Hillam v. Hillam*, 2024 UT App 102, n.2, 554 P.3d 1137 (cleaned up).

Account, Lomsanidze would repair the cars, and Musayev would sell them. Lomsanidze testified that the agreement initially entailed splitting profit from auto sales equally but that after Lomsanidze sold several cars, the agreement was modified so that he would pay a flat fee of $200 for Musayev to buy a car and $250 for Musayev to sell the car. Musayev's version of the agreement was slightly different, and he testified that Lomsanidze agreed to let Musayev "borrow" money from the Account to buy cars and that Musayev agreed to either pay back Lomsanidze directly or put any money he took back into the Account.

¶5 Lomsanidze testified that he worked on thirty to forty cars under this arrangement with Musayev. But when Lomsanidze checked the Account in 2017, he discovered that it was empty. Lomsanidze learned that the credit union had frozen the Account after someone stole his checks and tried to use them without his signature. When Lomsanidze confronted Musayev about what happened to the money that was in the Account, Musayev explained that when it was frozen, he transferred the money into his personal account.

¶6 Believing Musayev had connected the Account with his personal and Autobuysale accounts, made unauthorized withdrawals, and deposited unknown amounts into the Account, Lomsanidze filed a complaint against Musayev and Autobuysale alleging conversion, theft by deception, unjust enrichment, and breach of contract. Musayev filed a counterclaim alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress (IIED).[2] The IIED claim resulted from a letter Lomsanidze's first counsel had sent to Musayev, demanding Musayev pay Lomsanidze $120,000 within two weeks or counsel would file a criminal

---

2. The complaint was ultimately amended to include all of these claims.

complaint against Musayev and a complaint with the Internal Revenue Service.[3]

*Motion to Dismiss*

¶7     Musayev and Autobuysale (collectively, Defendants) filed a motion to dismiss. They argued that the case against Musayev as an individual should be dismissed because Lomsanidze "failed to aver sufficient facts to pierce the corporate veil of the company." Defendants argued that Lomsanidze did not allege sufficient facts to hold Musayev personally liable because there were no allegations to support piercing the corporate veil with respect to Autobuysale.

¶8     In opposition, Lomsanidze argued that the motion to dismiss should be denied because Lomsanidze pleaded multiple "causes of action directly and personally" against Musayev. Specifically, the complaint alleged claims against Musayev for conversion, theft by deception, unjust enrichment, and breach of contract.

¶9     The trial court denied the motion, determining that Lomsanidze's complaint contained multiple causes of action and factual allegations against Musayev individually and "sufficiently state[d] claims upon which relief may granted." Additionally, the court noted that Lomsanidze represented that he was not asserting, and would not assert, a "pierce the veil" claim at trial to find Musayev liable for claims made against Autobuysale.

*Motion for Jury Trial*

¶10    Approximately five weeks before the bench trial, Defendants filed a Motion for Late Requested Jury Trial (the Jury

---

3. This attorney withdrew as Lomsanidze's counsel several months after sending this letter and was sanctioned by the Utah State Bar.

Motion). In the Jury Motion, Defendants argued that the majority of Lomsanidze's motions in the case had been granted while the majority of Musayev's motions had been denied. According to Musayev, some of these denials "significantly prejudiced [their] discovery rights and the ability to prepare for trial and defend this case." As a result, a jury trial was necessary "to avoid any appearance of impropriety or partiality at the trial."

¶11 In response, Lomsanidze argued that "neither party demanded a jury within 14 days of the filing of the last pleading," as required by rule 38(b) of the Utah Rules of Civil Procedure and, thus, the parties waived trial by jury. Additionally, Lomsanidze asserted that a jury trial would prejudice him in numerous ways: (1) the bench trial was scheduled for four days due to the lack of jury selection and deliberation, and requiring a jury in the four day time frame "would not give the parties sufficient time to present their respective cases"; (2) attorney fees would become much more costly given the "amount of additional attorney time and work involved in preparing for a jury, preparing jury instructions, and the like"; and (3) "granting the motion on the eve of the currently scheduled trial . . . divert[ed] substantial attorney time away to jury related preparation" and "away from other planned trial preparation work."

¶12 The trial court denied the motion. It declined "to exercise its discretion to allow a jury trial because Defendants waited until the eve of trial to request it." It noted that "granting the request would result in unnecessary delay and significant prejudice to" Lomsanidze. In response to Defendants' contention that a jury trial was necessary to avoid any appearance of impropriety, the trial court stated it was "not persuaded that granting a belated request for a jury trial resolves the issue" because even though the court would not serve as factfinder, it would make "numerous evidentiary and other rulings during the course of a trial." As a result, the court declined "to allow a belated jury demand as a 'remedy' for Defendants' 'suspicion' that [the court's] 'prior

rulings [had been] significantly one-sided.'" The court then directed Defendants to file an appropriate motion to disqualify if it had a "good faith basis" for doing so.

*Motion to Disqualify the Trial Judge*

¶13    Defendants filed a motion to continue the bench trial just a few days prior to the scheduled trial date due to Defendants' counsel's (Counsel) medical issues. This was the second time such a motion was filed due to Counsel's medical conditions. Though the trial court ultimately granted the motion to continue (the Continuance Ruling), it placed certain conditions on Defendants. Specifically, it required that Defendants "obtain co-counsel or standby counsel in the event that [Counsel's] medical issues continue or he has new medical issues that interfere with his ability to prepare for trial or the trial itself." It required co-counsel or standby counsel to enter an appearance within fourteen days of the ruling. The trial court also stated that once a new trial date was set, a third continuance would not be granted and if Defendants were "unable to proceed to trial—with or without counsel—their answer [would] be stricken and their default [would] be entered." And the court determined that at the close of the trial, regardless of whether Lomsanidze prevailed, he would be entitled to "seek recovery of any taxable costs incurred in connection with the continuance."

¶14    In response to the Continuance Ruling, Defendants filed a motion to disqualify the trial judge. Defendants argued that the conditions for granting the continuance were "a clear manifestation of [the judge's] lack of impartiality." Defendants further asserted that the Continuance Ruling was "unconscionable and prejudicial" because the court "for reasons unknown/unspecified [was] trying to punish" Counsel.

¶15    In accordance with rule 63(c) of the Utah Rules of Civil Procedure, the trial judge certified Defendants' motion to the presiding judge or his designee for review. *See* Utah R. Civ. P.

63(c)(1) ("The judge who is the subject of the motion [to disqualify] must, without further hearing or a response from another party, enter an order granting the motion or certifying the motion and affidavit or declaration to a reviewing judge."). The judge designated by the presiding judge to review the motion (the Reviewing Judge) denied it. The Reviewing Judge found that Defendants did not demonstrate bias by the trial judge because they did not allege the trial judge had "prior knowledge of evidentiary facts," was "related to a party or an attorney, has a close social or professional relationship with a party or an attorney," "was involved in the case at hand before becoming a Judge," or had "a financial or property interest that could be affected by the outcome of the proceeding." The Reviewing Judge noted that "when a party disagrees with a judge's ruling, the proper avenue of relief is an appeal or mandamus, not disqualification." Ultimately, the Reviewing Judge found it was not unreasonable for the court to have included conditions in the Continuance Ruling and that the decision to do so "does not reflect bias, or any other reason for her disqualification."

¶16    Dissatisfied with both the Continuance Ruling and the denial of the motion to disqualify, Defendants filed a petition for extraordinary relief with this court, which was denied.

*Bench Trial*

¶17    A bench trial was finally held in October and November 2023. At the start of the bench trial, Lomsanidze dismissed all of his claims against Autobuysale with prejudice because several days before the trial, it had filed for Chapter 11 bankruptcy.

¶18    Lomsanidze was represented by counsel, but Musayev proceeded pro se after his attorney withdrew. Lomsanidze called himself and a friend (Friend) as witnesses. Musayev only called himself as a witness.

¶19 At the close of the trial, the trial court issued oral findings of fact and conclusions of law. First, the trial court noted that it did not find Musayev or Lomsanidze "to be entirely credible on all aspects of their testimony." However, the court found that it was "undisputed from the evidence at trial that there was at least an agreement that any funds that [Musayev] transferred out of the [A]ccount would be put back into the [A]ccount." The court found that Musayev borrowed more money from the Account than he paid back or returned but that Lomsanidze kept for himself some of the cars Musayev purchased and, thus, "not every transfer from [Musayev] to his personal account needed to be paid back." After crediting Musayev for several withdrawals that were made at Lomsanidze's request, the trial court found that the total "amount that was withdrawn from the account less the amount that was put back in the account [was] $82,687.87."

¶20 The trial court concluded that Musayev breached his oral contract with Lomsanidze. Specifically, the trial court concluded that Lomsanidze "performed under the contract by allowing [Musayev] to borrow money from the [A]ccount, that [Musayev] breached the contract by failing to repay all of the amounts that he borrowed and that [Lomsanidze] has suffered damages as a result of the breach of contract in the amount of $82,687.87." The court dismissed the theft by deception claim because it was not persuaded that a private cause of action exists for such a claim and, even if there was, Lomsanidze did not meet his evidentiary burden. The court then dismissed Lomsanidze's conversion claim, concluding that the parties had a contract, that the contract allowed Musayev to use the money in the Account, and that "[t]he fact that [Musayev] did not repay all of the funds that he borrowed, [did] not amount to conversion of the funds." Finally, the court dismissed Lomsanidze's unjust enrichment claim because it had found there was a contract.

¶21 The trial court dismissed Musayev's breach of contract counterclaim because Musayev "did not establish at trial that he

loaned any money to [Lomsanidze] or [Lomsanidze] failed to repay any money." Consequently, the court also dismissed Musayev's breach of the implied covenant of good faith and fair dealing counterclaim as Musayev did not establish a breach of contract. Finally, the court concluded that even though the letter sent by Lomsanidze's attorney was improper because it included threats of criminal prosecution for a civil dispute, "there was no evidence to show that the sending of the letter was so outrageous or intolerable that [Musayev] would be entitled to emotional distress damages."

## ISSUES AND STANDARDS OF REVIEW

¶22 Musayev brings several challenges on appeal. First, he asserts that the trial court erred in denying the motion to dismiss. "Because a trial court's grant or denial of a motion to dismiss is a question of law, the standard of review is correctness." *Moulding Invs., LLC v. Box Elder County*, 2024 UT App 23, ¶ 21, 545 P.3d 781 (cleaned up).

¶23 Second, Musayev asserts that the trial court abused its discretion by denying the Jury Motion. "The granting or denial of a jury trial, in the absence of proper procedural requirements, is within the sound discretion of the trial court," and therefore "we will not overturn the trial court's decision to deny an untimely jury demand absent an abuse of discretion." *Pete v. Youngblood*, 2006 UT App 303, ¶ 9, 141 P.3d 629 (cleaned up).

¶24 Third, Musayev maintains that the trial court erred in failing to recuse itself. "Whether a trial court erred by failing to recuse [it]self is a question of law that we review for correctness." *Camco Constr., Inc. v. Utah Baseball Academy, Inc.*, 2010 UT 63, ¶ 12, 243 P.3d 1269. Alternatively, he argues that the Reviewing Judge erred in failing to disqualify the trial court. "We review the denial of a motion to disqualify a judge for correctness." *Siebach v.*

*Brigham Young Univ.*, 2015 UT App 253, ¶ 13, 361 P.3d 130 (cleaned up).

¶25 Finally, Musayev asserts that there was insufficient evidence for the trial court to conclude that Musayev personally breached the oral contract with Lomsanidze and award $82,687.87 in damages. "When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if we otherwise reach a definite and firm conviction that a mistake has been made." *Koehler v. Allen*, 2020 UT App 73, ¶ 13, 466 P.3d 738 (cleaned up).[4]

## ANALYSIS

### I. Motion to Dismiss

¶26 Musayev asserts that the trial court erred in denying Defendants' motion to dismiss the case against him due to Lomsanidze's failure to allege facts sufficient to pierce the corporate veil of Autobuysale. However, it is not necessary to pierce the corporate veil of an entity when claims are raised against an individual directly. *See Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 13, 284 P.3d 630 (noting that the alter ego theory of liability allows a party to "'pierce the corporate veil' and obtain a judgment against the individual shareholders even when

---

4. In his brief on appeal, Lomsanidze asks this court for a "re-trial or an appeal based on several critical issues that warrant further examination." But Lomsanidze did not file a notice of cross-appeal. "Even though appellate courts are generally lenient with pro se litigants, those litigants must still follow the appellate rules." *Bell v. Bell*, 2013 UT App 248, ¶ 27, 312 P.3d 951. Therefore, these issues are not properly before this court, and we decline to address them. *See* Utah R. App. P. 4(d).

the original cause of action arose from a dispute with the corporate entity").

¶27 Here, Lomsanidze raised four claims against Musayev directly: conversion, theft by deception, unjust enrichment, and breach of contract. Additionally, Lomsanidze informed the trial court that he was not asserting, and would not assert, a "pierce the veil" claim at trial to find Musayev liable for the claims made against Autobuysale. Accordingly, the trial court correctly denied the motion to dismiss.

## II. The Jury Motion

¶28 Musayev argues that the trial court abused its discretion by denying the Jury Motion. Although Musayev does not contest that he waived his right to a jury trial, he maintains that he should nonetheless have been granted a jury trial because the trial court "did not remain impartial and sided with Lomsanidze while disparaging [Musayev] and [C]ounsel and denying the majority of [Musayev's] motions." And, according to Musayev, it was therefore "improper for the request for a jury trial to be denied."

¶29 Rule 39(b) of the Utah Rules of Civil Procedure permits a trial court to exercise its discretion and allow a trial by jury where a party has waived that right. Utah R. Civ. P. 39(b) ("[N]otwithstanding the failure of a party to demand a jury . . . , the court in its discretion . . . may order a trial by a jury."). But "the granting or denial of a jury trial, in the absence of proper procedural requirements, is within the sound discretion of the trial court." *Pete v. Youngblood*, 2006 UT App 303, ¶ 9, 141 P.3d 629 (cleaned up). And a court abuses its discretion only if its "decision exceeds the limits of reasonability." *Godfrey v. Godfrey*, 2024 UT App 156, ¶ 34, 560 P.3d 151 (cleaned up).

¶30 The trial court cited several reasons for denying the Jury Motion: (1) "Defendants waited until the eve of trial to request it"; (2) "granting the request would result in unnecessary delay and

significant prejudice to" Lomsanidze; and (3) granting the motion would not resolve Defendants' chief concern about impartiality because the trial court would make "numerous evidentiary and other rulings during the course of a trial." The trial court's reasons were all based on valid concerns raised by the Jury Motion, and we cannot say that the decision to deny the motion even approached the limits of reasonableness. Thus, we affirm the trial court's denial of the Jury Motion.

### III. Motion to Disqualify

¶31 Musayev asserts that the trial court erred in failing to recuse itself[5] and, alternatively, that the Reviewing Judge erred in failing to disqualify the trial court. Both of these arguments rely on the same reasoning, namely that the trial court's impartiality was in question based on rulings made in the case, so we address them as a single argument.

¶32 Our supreme court has explained that Canon 3 of the Utah Code of Judicial Conduct "provides a nonexhaustive list of instances where a judge's impartiality might reasonably be questioned, requiring recusal of the judge." *State v. Munguia*, 2011 UT 5, ¶ 17, 253 P.3d 1082 (cleaned up).

> Bias and prejudice are only improper when they are personal. A feeling of ill will or, conversely, favoritism toward one of the parties to a suit are what constitute disqualifying bias or prejudice. . . . However, neither bias nor prejudice refers to the

---

5. Rule 63(c)(1) of the Utah Rules of Civil Procedure provides that the judge "must . . . grant[] the motion [to disqualify] *or* certify[] the motion . . . to a reviewing judge." Utah R. Civ. P. 63(c)(1) (emphasis added). The trial judge thus had to make one of two choices: grant the motion or certify it to a reviewing judge. The trial judge chose the latter. Because this was an explicitly permissible choice, there was no error.

attitude that a judge may hold about *the subject matter* of a lawsuit. The Canon contemplates disqualification where, for instance, a judge has prior knowledge of evidentiary facts, is related to a party or an attorney, has a close social or professional relationship with a party or an attorney, was involved in the case at hand before becoming a judge, or has a financial or property interest that could be affected by the outcome of the proceeding. In other words, *the bias or prejudice must usually stem from an extrajudicial source, not from occurrences in the proceedings before the judge*.

*Id.* (cleaned up).

¶33 Musayev argues that the Reviewing Judge properly cited the definition outlined above but improperly ignored that the trial judge showed "favoritism toward one party to a suit and a feeling of ill will toward another party or attorney." Thus, he argues, the claims set forth in the motion were "viable for [the trial judge's] disqualification."

¶34 As a function of our adversarial system of justice, any decision a judge makes will necessarily result in one party being dissatisfied. That reality does not demonstrate that a judge has "ill will" or "favoritism" toward one party over another.

¶35 Here, Defendants were unsatisfied with the trial court's rulings in the case, which they felt favored Lomsanidze. But the Reviewing Judge was correct that "no deduction of bias and prejudice may be made from adverse rulings by a judge." *In re Affidavit of Bias*, 947 P.2d 1152, 1153–54 (Utah 1997) (cleaned up). And our supreme court has "repeatedly held that adverse rulings alone are insufficient to establish the existence of judicial bias." *Dahl v. Dahl*, 2015 UT 79, ¶ 52, 459 P.3d 276. Thus, Musayev's arguments are "wholly without merit." *Id.*

¶36    Musayev also takes issue with the Reviewing Judge making the ruling on disqualification rather than the presiding judge. This argument is meritless because all of the judges involved followed the proper procedure as set forth in rule 63(c) of the Utah Rules of Civil Procedure. Once a motion to disqualify a judge has been filed, "the judge who is the subject of the motion must, without further hearing or a response from another party, enter an order granting the motion or certifying the motion and affidavit or declaration to a reviewing judge." Utah R. Civ. P. 63(c). "The presiding judge of the court, any judge of the district, or any judge of a court of like jurisdiction may serve as the reviewing judge." *Id.* Thus, the trial judge properly entered an order referring the motion to the presiding judge, who properly referred it to the Reviewing Judge.

¶37    Therefore, we affirm both the trial judge's order certifying the motion to disqualify to the presiding judge and the Reviewing Judge's denial of the motion.

### IV. Sufficiency of the Evidence

¶38    Finally, Musayev asserts that there was insufficient evidence for the trial court to conclude that he personally breached the oral contract with Lomsanidze and is liable for $82,687.87 in damages. According to Musayev, "[w]hile testimony showed that a verbal contract may have been loosely formed, no evidence was presented to show that [Musayev] failed to follow the terms of the agreement."

¶39    "When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if we otherwise reach a definite and firm conviction that a mistake has been made." *Koehler v. Allen*, 2020 UT App 73, ¶ 13, 466 P.3d 738 (cleaned up). And where the sufficiency of the evidence turns on a factfinder's determination of witness credibility, "it is the province of the trier of fact to assess the credibility of witnesses, and we will not

second-guess the trial court where there is a reasonable basis to support its findings." *Capozzoli v. Madden*, 2024 UT App 176, ¶ 36, 561 P.3d 727 (cleaned up). "The presence of contradictory evidence is generally not sufficient to overturn a verdict, because the factfinder determines which evidence to believe when conflicting evidence is presented." *Id.* (cleaned up). And "when a [trial] court evaluates witness credibility in a bench trial, the mere existence of inconsistencies is not a sufficient basis to question credibility determinations." *Id.* (cleaned up). We therefore "accord deference to the trial court's ability and opportunity to evaluate credibility and demeanor." *Hale v. Big H Constr., Inc.*, 2012 UT App 283, ¶ 35, 288 P.3d 1046 (cleaned up).

¶40   Musayev asserts, "While the parties disagreed where some of the money went, evidence showed money going in and out of Lomsanidze's account. Lomsanidze even had a list of vehicles that [Musayev] had purchased. Although they differed on the number, [Musayev] at least purchased fourteen (14) vehicles for Lomsanidze." But importantly, Musayev admits that the "parties disagreed [about] where some of the money went."

¶41   The trial court heard testimony from Lomsanidze, Friend, and Musayev and considered the bank statements, checks, and other evidence presented. The trial court, serving as factfinder, was free to decide whose testimony was more credible. And after considering all the evidence before it, the trial court found Lomsanidze was more credible than Musayev, even though it found neither to be entirely credible. That the trial court made a necessary credibility determination—thus discounting the testimony of one or more witnesses—does not mean the evidence was insufficient. Accordingly, we cannot conclude that the trial court's judgment was against the clear weight of the evidence or that any mistake was made.

CONCLUSION

¶42    We affirm the trial court's rulings on the motion to dismiss and the Jury Motion, as well as its conclusion that Musayev breached the oral contract with Lomsanidze. We also conclude that the trial court did not err in failing to recuse itself, nor did the Reviewing Judge err in denying the motion to disqualify the trial court. Finally, we decline to address the issues raised by Lomsanidze because he failed to file a notice of cross-appeal.

——————