**Helen INGRAM, formerly known as Helen Woolworth, Plaintiff and Appellant,**

v.

**Henry H. FORRER and Chlora Forrer, his wife, Defendants and Respondents.**

**No. 14608.**

Supreme Court of Utah.

April 6, 1977.

Robert M. McRae, Salt Lake City, for plaintiff and appellant.

James J. Smedley, Heber City, for defendants and respondents.

ELLETT, Chief Justice:

On November 10, 1968, the Forrers sold to Helen Ingram (then known as Helen Woolworth) certain real property in Duchesne County, Utah, pursuant to a Uniform Real Estate Contract. The Forrers signed a warranty deed and placed it in escrow on or about October 30, 1969. This deed was to be given to the purchaser if and when she paid the full purchase price as set out in the real estate contract. The final payment was made on or about February 26, 1973, and the deed was then delivered to Ms. Ingram.

On July 10, 1970, while the warranty deed was in escrow and before it was placed of record in the office of the county recorder, the Forrers sold the mineral rights of the real property in question to a third person. The warranty deed between the parties hereto contained no reservations or restrictions and on its face conveyed all the land and rights therein.

The Uniform Real Estate Contract provided that the sellers would give a deed conveying title free and clear of all encumbrances. It also provided that the buyer accept the "property in its present condition and that there are no representations, covenants, or agreements . . . except as herein specifically set forth or attached hereto." No additions or exceptions were set forth except a notification that the mobile home on the land would be included in the purchase price. There is no claim made of any ambiguity in the pleadings or on appeal.

The trial court permitted parol evidence to show what the agreement between the parties was. There was no issue of ambiguity raised by the pleadings nor was there any allegation of fraud or inequitable conduct charged against the purchasers. Hence, the only basis, if any, for reformation of the contract would be that of a mutual mistake of fact. The term mutual mistake has been defined in 66 Am.Jur.2d 549, Reformation of Instruments, Section 22. At page 550 that section reads:

. . . Indeed, when no question of fraud, bad faith, or inequitable conduct is involved and the right to reform an instrument is based solely on a mistake, *it is necessary that the mistake be mutual*, and that *both* parties *understood* the contract as the complaint or petition alleges it ought to have been, and as in fact it was except for the mistake; and this is so whether the mistake is one of fact or one of law.

It follows from the above that in the absence of fraud or inequitable conduct by the other party, or of a voluntary instrument which a donor seeks to have reformed, *unilateral mistake is not a ground for reformation,* . . . . [Emphasis added.]

Section 123 of the same topic in Am.Jur.2d states the law to be that a mere preponderance of the evidence is not sufficient to prove a mutual mistake and cites numerous authorities to support that proposition. The proof required is therein stated to be "clear and convincing" or "clear and satisfactory" or "clear, satisfactory, and convincing."

An honest difference of understanding as to what the contract was is fatal to reformation, for in such case there is no meeting of the minds of the parties and no pre-existing agreement to which the written instrument can be conformed.[1]

It is often stated that reformation will not be granted on contradictory evidence. This is true only when the evidence to support a reformation is within itself

---

1. 66 Am.Jur.2d, Reformation of Instruments, Sec. 125.

contradictory. It does not mean that the other party may not offer contradictory evidence and thereby prevent reformation.[2]

In the instant matter the court permitted the defendant to vary the plain and unambiguous terms of the three signed agreements, towit: The Earnest Money Agreement, the Uniform Real Estate Contract, and the Warranty Deed. None of these documents reserved any mineral rights unto the sellers of the land.

The basis upon which a reformation was permitted was the testimony of Henry E. Forrer, the record owner of the real property. He testified that he and the plaintiff were out on the land alone and that he told her that he did not know whether there were any mineral rights on the land but if there were, they were reserved. He walked back to where the real estate broker was and signed the Earnest Money Agreement without mentioning the matter of any reservation. Likewise, when he signed the Uniform Real Estate Contract, he made no request for a reservation of mineral interests. Thereafter he signed the Warranty Deed without requesting any reservation of mineral rights.

The first time he ever knew of any mineral rights was around July 10, 1970, when he sold them to one Howard Spear. His testimony in that regard was as follows:

Q. (By Mr. Sam) All right. Why did you sell—Let me rephrase the question. Why did you sell the minerals to Mr. Spear?

A. I was just going to tell you what he told me. He just wrote me a letter, and he sent the blank, and he told me, "You've got mineral rights." And he said, "If you've got mineral rights, I'll give you five hundred—." And he said he knew I had mineral rights because he had investigated. And I wasn't sure I had any and didn't know whether I had any. So he sent me a blank and said, "If you've got mineral rights and want to sell them, I'll give you $500. Just fill out that blank." And I filled out the blank and sent it to him, and he sent me $500.

The plaintiff denied that any such statement about reserving minerals was ever made, and there is no evidence that she ever agreed to it. Even if Mr. Forrer had orally stated that he wanted to, or intended to, reserve mineral rights, that alone does not constitute an agreement so as to be a mutual mistake of fact when the agreement was reduced to writing. Oral statements or offers made prior to the final writing are deemed of no worth unless they are incorporated into the written agreement. To reform the written contract in order to include prior statements, it is necessary to prove by clear and convincing evidence that the minds of both parties had been in agreement on a term which they mutually failed to incorporate into the writing.

While in equity cases we accord due regard to the position of a trial judge in making his findings of fact, we are not required to affirm him where it appears that he has erred.[3]

We do not believe that the evidence of a mutual mistake of fact was established by evidence which is clear and convincing or established at all. We therefore reverse the judgment of the trial court. The plaintiff knew at the time of purchase that the defendant owned only twenty-five percent of the mineral rights, and she would only be entitled to recover for the value of that amount.

The case is remanded for a new trial to ascertain the damages sustained by the plaintiff by reason of the failure of defendant to convey the mineral rights which he sold after the deed was executed and placed in escrow.

Costs are awarded to the appellant.

CROCKETT, MAUGHAN, WILKINS and HALL, JJ., concur.

**2.** Id.

**3.** Article VIII, Sec. 9, Utah State Constitution; *First Security Bank of Utah v. Demiris*, 10 Utah 2d 405, 354 P.2d 97 (1960); *Wiese v. Wiese*, 24 Utah 2d 236, 469 P.2d 504 (1970).