Thomas C. MABEY and Louise S. Mabey, his wife, Plaintiffs and Respondents,

v.

KAY PETERSON CONSTRUCTION COMPANY, INC., a Utah corporation, Defendant and Appellant.

WASATCH CABINET COMPANY, INC., a Utah corporation, Plaintiff and Respondent,

v.

KAY PETERSON CONSTRUCTION COMPANY, INC., a Utah corporation, et al., Defendant and Appellant.

No. 18338.

Supreme Court of Utah.

April 24, 1984.

W. Walden Lloyd, Salt Lake City, for defendant and appellant.

George S. Diumenti, Bountiful, for plaintiffs and respondents.

HOWE, Justice:

Defendant Kay Peterson Construction Company appeals from an adverse judgment contending (1) it was error to award any damages to the plaintiffs, and (2) defendant was awarded an insufficient amount on its counterclaim after the court reformed the contract between the parties.

Plaintiffs Thomas C. Mabey and Louise S. Mabey, his wife, purchased a "spec" house from the defendant construction company. Mr. Mabey, an engineer, had participated in its construction, as well as in the development of other houses built by the construction company. The Mabeys had expressed an interest in this particular house in its early stages of construction and had told Kay Peterson, the construction company's president, that if the price were right, they might consider buying it for themselves. On or about March 20, 1980, when the house was about 95% completed, plaintiffs asked Peterson to give them a breakdown of the cost of construction so that they could decide whether to purchase it. At about the same time, plaintiffs also paid for certain concrete used in the construction, for which defendant gave

them a receipt. The receipt acknowledged payment from plaintiffs of $1,182.56, recited that the total estimated cost of the *lot and dwelling* to that date was $134,068.40, and that the payment was to be applied toward the purchase but would be reimbursed to plaintiffs in the event defendant did not sell the house to them. With that information in hand, Mr. Mabey prepared an Earnest Money Receipt and Offer to Purchase (hereafter the contract) which contained the following language:

> The purchase price is based on all costs relative to the construction of the dwelling as per plans and specifications plus an $8,500 seller's profit. However, the total cost shall be based on the projected cost estimate, Exhibit A, attached and hereby made a part of this agreement, and in no event shall said total cost exceed $136,000 unless agreed upon in writing by both buyer and seller.

A breakdown of construction items totaling $134,068.40 was subsequently supplied by defendant. Both parties agreed to round that sum off to $136,000 as a buffer after defendant represented that some incidental costs of completion had not been accounted for.

Knowing that the cost of the house and lot would exceed the amount of any mortgage loan that they could obtain, plaintiffs had made arrangements with third parties to purchase the lot for them as part of a separate transaction. The construction company consented to that arrangement and $27,000 for the lot was paid to it directly by the third party. An $18,500 check drawn against the defendant's construction loan had been paid to the titleholder of the lot to release the lot to the construction company. $500 of that amount was estimated accrued interest. In attaching the list of construction costs (Exhibit A) to the contract, Mr. Mabey noticed a $9,000 item for "lot payoff" on the list. He inquired of Peterson whether another item on the list identified as "loan disbursement to date" in the amount of $77,565 included the other $18,000 that had already been paid for the lot. He was told that it did. Based on that

information and because the $9,000 item had also been erroneously included in the cost total, the amount of $136,000 in the contract was reduced by $27,000 and initialed by both parties to read $109,000, inasmuch as the contract was to exclude the cost of the lot.

After payment of the $109,000 purchase price by the plaintiffs (primarily by a mortgage loan), the construction company discovered that the $77,565 item did not include the $18,000 which it had paid on the lot and so notified plaintiffs. Plaintiffs refused to adjust the price. The construction company responded by refusing to pay outstanding amounts to subcontractors, who in turn placed mechanic's liens against plaintiffs' house and began legal action to foreclose them.

Plaintiffs then commenced the instant suit against the construction company for breach of contract and warranty. The construction company counterclaimed for $11,037.47 it claimed due under an alleged oral agreement. The foreclosure action of the lienholders was consolidated for trial with the instant action. Plaintiffs compromised and paid the claims of the lienholders for $9,737 and caused the foreclosure action to be dismissed. The case went to bench trial on the claims of the plaintiffs and defendant. The court found that the construction company had erred in its preparation of Exhibit A, which resulted in a loss to it of $11,037.47, and that neither of the parties was aware of the mistake. Judgment for that amount was awarded defendant. It also found that plaintiffs had suffered $9,737 in damages as a result of the lien settlement. It awarded plaintiffs judgment for that amount plus $5,400 to remedy certain defective construction, and costs and attorney fees in the sum of $2,560.

The construction company appeals, citing three errors: (1) the trial court granted it an insufficient amount as remedy for reformation of contract for mutual mistake; (2) the trial court erred in awarding plaintiffs damages for lien payments, together with interest and attorney fees incurred; and (3) evidence adduced by plaintiffs was insuffi-cient to prove damages in the sum of $5,400 for defective construction. We address those issues in that sequence.

In its counterclaim, the construction company alleged that the total cost of construction of the house plus the lot was $159,037.47, that the plaintiffs had paid $148,000 (including the amount paid to the lienholders and the $27,000 for the lot), leaving $11,037.47 unpaid. The trial court awarded judgment for that amount. Testimony adduced at trial centered around Exhibits 4 through 14, constituting the Contractor's Authorization for Payment sheets together with attached invoices, which approximated the sum of $77,565 in loan disbursements. These were offered in support of the claim that that sum did not include the $18,000 paid on the lot.

The construction company contends that the trial court should have awarded it $18,000 after it ruled that there had been a mutual mistake of fact. We are at a loss to understand the fundament for that ruling. Mutual mistake is an affirmative defense as it raises matters outside the plaintiffs' prima facie case, and the failure to assert it is a waiver of that defense. Utah R.Civ.P. 8(c), 12(h); *Phillips v. JCM Development Corp.*, Utah, 666 P.2d 876 (1983). Mutual mistake was not raised as a defense nor was it made a claim by the construction company in its counterclaim. Rule 9(b) requires that in all averments of mistake, the circumstances constituting mistake shall be stated with particularity. *Battistone v. American Land & Development Co.*, Utah, 607 P.2d 837 (1980); *Neeley v. Kelsch*, Utah, 600 P.2d 979 (1979). It is true that when issues not raised by the pleadings are tried by express or implied consent they shall be treated in all respects as if they had been raised in the pleadings. Rule 15(b); *Poulsen v. Poulsen*, Utah, 672 P.2d 97 (1983), *General Insurance Co. of America v. Carnicero Dynasty Corp.*, Utah, 545 P.2d 502 (1976); *Holdaway v. Hall*, 29 Utah 2d 77, 505 P.2d 295 (1973). Furthermore, Rule 15(b) allows the trial court to grant leave to amend pleadings to conform to the evidence. *Poulsen v. Poul-*

*sen,* supra. No such motion was made during trial. In his opening statement, counsel for the defense presented reformation of contract for lack of integration as his theory of the case under which defendant would claim additional sums under an alleged oral contract. During testimony, counsel for plaintiffs objected to the admission of any evidence tending to vary the terms of the written contract. Nothing before us indicates that mutual mistake was relied upon in closing argument so that issue was never before the court.

■ Nonetheless, Utah R.Civ.P. 54(c)(1) directs that every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party had not demanded such relief in his pleadings. In consonance with that rule, it would have been proper for the court to have reformed the contract if a mutual mistake of fact had been established by clear and convincing evidence. *Neeley v. Kelch,* supra; *Hatch v. Bastian,* Utah, 567 P.2d 1100 (1977), citing *Ingram v. Forrer,* Utah, 563 P.2d 181 (1977).

The relevant findings of fact in favor of defendant read as follows:

FINDINGS OF FACT NO. 17: That *defendant* Kay Peterson Construction Company *erred* in the preparation of Exhibit A, upon which exhibit the parties negotiated the purchase price of the residence in the sum of $11,037.47 to its detriment. Said error arose out of defendant Kay Peterson Construction Company's omission from consideration a transaction concerning the subject lot in November 1979.

FINDINGS OF FACT NO. 18: That prior to the 25th day of March, 1980, plaintiffs and defendant Kay Peterson Construction Company reviewed and discussed Exhibit A and neither was aware of the *defendant's mistake.* From which mistake defendant Kay Peterson Construction Company suffered a loss in his contemplation of $11,037.37 [sic]. [Emphasis added.]

■ It is the rule in this forum that the power to reform a written instrument by reason of mutual mistake exists under three alternative proofs:

(1) that the instrument as made failed to conform to what *both parties* intended; or (2) that the claiming party was mistaken as to its actual content and the other party, knowing of this mistake, kept silent; or (3) that the claiming party was mistaken as to actual content because of fraudulent affirmative behavior. [Emphasis added].

*Jensen v. Manila Corp. of the Church of Jesus Christ of Latter-Day-Saints,* Utah, 565 P.2d 63 (1977).

It is clear from the record that there was no fraudulent affirmative behavior on the part of the plaintiffs. It is undisputed that the plaintiffs did not know of the construction company's mistake; quite the contrary, they asked for and relied on information given them by defendant that the $77,-565 listed as loan disbursements to date included the $18,000 paid on the lot, which they were not obligated to pay. A finding of mutual mistake in this case must therefore pivot on a common intent by the parties to agree to one thing, and that understanding must have remained unchanged when the final contract was entered into which incorrectly stated something else.

In *Tayyara v. Stetson,* Colo.App., 521 P.2d 185 (1974), the court refused to find mutual mistake where the defendant had conveyed to the plaintiff two lots for the price of $6,500, when in fact each lot should have been sold for that amount. The plaintiff testified that he had always understood both lots together to cost that price. In explaining its holding, the court stated that reformation is based

on the theory that where there has been an initial meeting of the minds, the substance of which has been incorrectly reduced to writing, a court of equity may reform the written contract to reflect the initial agreement of the parties, where to do otherwise would result in an injustice. [Citation omitted.] Where, however, there has been no initial meeting of the minds, the court will not speculate as to what agreements would have been

reached and on that basis make a new contract for the parties. [Citation omitted.]

Another case, *Seattle First National Bank v. Earl*, 17 Wash.App. 830, 565 P.2d 1215 (1977), dealt with a contract clause containing a non-existing cost of living index. Refusing to find mutual mistake, the court stated 565 P.2d at 1219: "If one party has no independent knowledge and accepted another's analysis and opinion, the mistake is unilateral." The rationales of the just mentioned cases are dispositive for our purposes.

On March 20, 1980, the construction company signed a receipt for the plaintiffs' payment of concrete. The receipt recited that "said amount will be applied toward the Mabey's purchase of same said lot and dwelling unit (total estimated cost to date is $134,068.40)." The list of construction costs attached to the contract signed by both parties on March 25 expressly included as an item of "estimated costs to finish" $9,000 for "lot payoff" and upon inquiry plaintiffs were also told that another item entitled "loan disbursement to date" included the $18,000 which had already been paid on the lot. Absent a breakdown of the $77,565 into component parts, the plaintiffs had no independent knowledge and accepted the construction company's analysis and opinion. The mistake was the defendant's alone, and the findings so state. We cannot speculate whether plaintiffs would have purchased the house had they been presented with a price of $18,000 more.

The construction company misplaces its trust in three cases which are easily distinguished. In *Kesler v. Rogers*, Utah, 542 P.2d 354 (1975), the defendant knew that he was not entitled to the real and personal property mistakenly conveyed to him, and his subsequent wrongful conduct thus squarely fell within the rule of *Jensen v. Manila Corp.*, supra, permitting reformation. In the latter case, the purchasers had their deed reformed to enlarge the conveyance to a fence line that had been represented as the boundary line by the representative of the defendant, and both parties

clearly intended that an excluded strip of land was to be part of the conveyance. In *Intermountain Farmers Association v. Peart*, 30 Utah 2d 201, 515 P.2d 614 (1973), the grantor intended to convey two acres of land, not five, as described in the deed, and the grantee never expected more than two acres.

■ Conversely, unilateral mistake in other cases did not relieve a party from an obligation once assumed. *Ingram v. Forrer*, supra; *First Security Bank of Utah v. Colonial Ford*, Utah, 597 P.2d 859 (1979); *Williams v. Oldroyd*, Utah, 581 P.2d 561 (1978). The construction company's claim for reformation to enlarge the contract payment by $18,000 must be rejected as the evidence does not support a finding of mutual mistake, but clearly points to a unilateral mistake.

The construction company's second claim of error is predicated upon the erroneous assumption that plaintiffs' payments to lienholders are not recoverable since they were not in excess of the reformed contract price of $127,000. In view of our holding that the contract price remained fixed at $109,000, there is no need to address that issue as we have found that there was no basis for reformation resulting from unilateral mistake.

■ Finally, the construction company claims that plaintiffs' evidence adduced to support their claim for damages resulting from defective construction was insufficient to award them damages of $5,400. In fixing damages, the trial court is vested with broad discretion, and the award will not be set aside unless it is manifestly unjust or indicates that the trial court neglected pertinent elements, or was unduly influenced by prejudice or other extraneous circumstances. *Clayton v. Crossroads Equipment Co.*, Utah, 655 P.2d 1125 (1982). Mr. Mabey testified as an expert as to the cost of the labor required to repair the defective workmanship. After discussion in chambers, the court limited inquiry into the defects to those listed by plaintiffs on a correction report they had filed with the State Department of Contractors. The

report was admitted for informational purposes only. As a civil engineer who had been extensively involved in the building of not only the subject house but other houses built by the construction company, Mr. Mabey had the proper credentials to render his opinion. He estimated the time involved and the hourly compensation usually paid for that type of work. The construction company offered no testimony to rebut the existence of defects or the costs of their repairs. There was therefore a reasonable basis on which the trial court could have found for the plaintiffs, and we will not disturb those findings on review.

■ The propriety of the judgment awarding the construction company damages of $11,037.47 is not properly before us since plaintiffs have not cross-appealed raising that issue. *Terry v. Z.C.M.I.*, Utah, 617 P.2d 700 (1980). The judgment awarding the plaintiffs damages of $5,400 for defective workmanship, awarding plaintiffs $9,737 for lien reimbursement and $2,560 for costs and attorney fees is affirmed. Costs are awarded to plaintiffs.

HALL, C.J., and OAKS, STEWART and DURHAM, JJ., concur.