IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| GDE Construction, Inc., | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20110128-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Dianne W. Leavitt, Lorin Leavitt, and | ) | (October 25, 2012) |
| Bank of American Fork, | ) | |
| | ) | 2012 UT App 298 |
| Defendants and Appellees. | ) | |

-----

Fourth District, Provo Department, 080402840
The Honorable Steven L. Hansen

Attorneys:     Daniel R. Widdison, Park City, and Randy B. Birch, Heber City, for
               Appellant
               Jamis M. Gardner, Provo, for Appellees Dianne W. Leavitt and Lorin
               Leavitt
               Felicia B. Canfield, Jennifer E. Decker, and Clint R. Hansen, Salt Lake
               City, for Appellee Bank of American Fork

-----

Before Judges Orme, Thorne, and Voros.

VOROS, Judge:

¶1     This dispute arises from a home remodeling project that escalated from $900,000
to $2.4 million. GDE Construction, Inc. was the general contractor on the project, Dianne
W. and Lorin Leavitt the homeowners, and Bank of American Fork the construction
lender. The trial court ruled that GDE's mechanics' lien was unenforceable and entered
judgment in favor of the Leavitts and the Bank. We affirm.

¶2    GDE actually filed a total of three mechanics' liens on the home. It recorded the first lien in March 2008 after a series of cost increases on the remodeling project led to a dispute over payment. The lien stated that GDE was owed $140,000. To induce GDE to release the lien, the Leavitts gave GDE a promissory note secured by a trust deed on other property. GDE recorded a Release of Mechanics' Lien (Release of Lien) stating that the mechanics' lien "is hereby released, the claim having been fully paid and satisfied and that the Mechanics' Lien . . . is hereby satisfied and discharged." GDE did no further work on the property.

¶3    Two months after filing the Release of Lien, GDE recorded a second lien on the home. It gave the same dates of service as the first lien, but claimed that GDE was owed $150,000. The following month GDE recorded a third, amended lien. The amended lien gave the same dates of service as the first and second liens, but claimed that GDE was owed $563,690.45. This figure included sums purportedly owed both to GDE subcontractors and to other contractors or suppliers for the project.

¶4    GDE then filed this action against the Leavitts and the Bank, seeking to foreclose its amended lien and asserting related claims against the Leavitts.[1] The Leavitts counterclaimed, alleging various causes of action, including the filing of a wrongful lien. After discovery, the Bank moved for summary judgment and the Leavitts moved for partial summary judgment. The Leavitts contended that the delivery of the note and trust deed constituted an accord and satisfaction. They also contended that the Release of Lien barred GDE's claim. In opposing summary judgment, GDE alleged for the first time the affirmative defense of mutual mistake. The Leavitts and the Bank moved to strike GDE's mutual mistake defense, together with portions of a declaration by GDE principal Amy Eldredge supporting that defense.

¶5    The trial court granted the motion to strike. It also granted summary judgment in favor of the Bank, granted partial summary judgment in favor of the Leavitts, and, in a combination of subsequent orders, ordered GDE to pay attorney fees to both. The trial court certified the orders as final under rule 54(b) of the Utah Rules of Civil Procedure. GDE challenges these rulings on appeal. This court "reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and

---

1. GDE also began a non-judicial foreclosure of the trust deed, but stipulated to a preliminary injunction pending resolution of this case.

views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson,* 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).

## I. Jurisdiction

¶6      As a threshold matter, the Bank contends that GDE's appeal is untimely and that, consequently, this court lacks jurisdiction to entertain this appeal. "[A] lack of jurisdiction can be raised by the court or either party at any time. Where an appeal is not properly taken, this court lacks jurisdiction and we must dismiss." *Bradbury v. Valencia,* 2000 UT 50, ¶ 8, 5 P.3d 649 (citation and internal quotation marks omitted). The Bank argues that the trial court entered final judgment on December 9, 2010 (the Summary Judgment Order), but GDE did not file its notice of appeal until February 1, 2011, after the thirty-day deadline to appeal the Summary Judgment Order had passed.

¶7      To invoke this court's jurisdiction, an appellant must file a notice of appeal from a final order within thirty days after entry of a final, appealable order. *See* Utah R. App. P. 3–4; *see also Loffredo v. Holt,* 2001 UT 97, ¶ 11, 37 P.3d 1070. The Bank's argument fails because the trial court's December 9, 2010 order was not such an order. That order granted both the Bank's and the Leavitts' motions for summary judgment, dismissed GDE's amended complaint, found that GDE's mechanics' lien was void, and granted attorney fees to the Bank. However, the order required the Bank to submit an affidavit of attorney fees to establish the amount of the award. Moreover, the order did not resolve the Leavitts' outstanding request for attorney fees. But on January 10, 2011, the trial court entered judgment in favor of the Bank for attorney fees and costs in the amount of $159,673.90, and a separate judgment in favor of the Leavitts for fees and costs in the amount of $73,548.45. GDE filed a notice of appeal on February 1, 2012, less than thirty days later.

¶8      "A judgment is not final if the trial court has failed to determine whether attorney fees should be awarded." *Loffredo,* 2001 UT 97, ¶ 12. Furthermore, an order that awards attorney fees is not final until the trial court determines the amount of attorney fees to be awarded. *Promax Dev. Corp. v. Raile*, 2000 UT 4, ¶ 15, 998 P.2d 254. These requirements serve "the interest of judicial economy" by "enabling an appellant to appeal all issues, including an award of attorney fees, in a single notice of appeal." *Id.* (brackets, citation, and internal quotation marks omitted).

¶9 Therefore, the trial court's order became final and appealable on January 10, 2011, when the trial court entered judgment in favor of the Bank in the amount of $159,673.90 and in favor of the Leavitts in the amount of $73,548.45. GDE filed its February 1 notice of appeal within the thirty days required under rule 4 of the Utah Rules of Appellate Procedure. Consequently, this court has jurisdiction. *See* Utah R. App. P. 4(a); *Loffredo,* 2001 UT 97, ¶¶ 12–13.

## II. Waiver of the Mutual Mistake Defense

¶10 GDE contends that the trial court erred when, on summary judgment, it struck GDE's defense of mutual mistake and related statements in the Eldredge declaration. The trial court ruled that GDE had "never raised the defense or made any allegation or averment related to mistake or mutual mistake in any of its prior pleadings or filings in this action." Thus, the trial court ruled that the defense was waived.

¶11 Resolution of this issue turns on the interpretation of a rule of procedure. "Interpretation of the Utah Rules of Civil Procedure is a question of law that we review for correctness." *Pete v. Youngblood,* 2006 UT App 303, ¶ 7, 141 P.3d 629. We review a trial court's decision to exclude testimony on the grounds that a party failed to comply with the rules under an abuse of discretion standard. *Id.* (affirming the trial court's decision to strike the affidavit of a witness on the ground that the party had failed to fully comply with rule 26 of the Utah Rules of Civil Procedure).

¶12 GDE contends that the "catchall" defense in its Verified Answer and Answer to the Leavitts' First Amended Complaint should be read as an assertion of the specific defense of mutual mistake "[n]ow that the facts supporting GDE's mutual mistake argument have been developed" through discovery. GDE's catchall defense "specifically pleads" any matter that might, through discovery, turn out later to be a defense:

> GDE specifically pleads the defense of estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, statute of frauds, and any other matter constituting an avoidance or affirmative defense as may be disclosed through discovery.

The trial court ruled that this "catchall statement does not comply with the purpose of Rule 8(c) [of the Utah Rules of Civil Procedure], whose purpose is to put the opposing party on notice of what the party claims as defenses." We agree.

¶13     "Normally, a party waives all defenses not raised in a responsive pleading, such as an answer or reply." *Mack v. Utah State Dep't of Commerce, Div. of Sec.*, 2009 UT 47, ¶ 14, 221 P.3d 194. "Mutual mistake is an affirmative defense . . . , and the failure to assert it is a waiver of that defense." *Mabey v. Kay Peterson Constr. Co.*, 682 P.2d 287, 289 (Utah 1984). Rule 8 requires that affirmative defenses be set forth in a responsive pleading:

> [A] party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

Utah R. Civ. P. 8(c).[2] Subject to exceptions inapplicable here, defenses not properly pleaded are waived. *See id.* R. 12(h) ("A party waives all defenses and objections not presented either by motion or by answer or reply . . . ."). Moreover, rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* R. 9(b); *see also Mabey*, 682 P.2d at 289.

¶14     GDE's "catchall" defense does not satisfy these requirements. It did not mention mutual mistake, let alone state with particularity the relevant circumstances as required by rule 9(b). *See Cantamar, LLC v. Champagne*, 2006 UT App 321, ¶ 38 n.8, 142 P.3d 140 (refusing to address an unpleaded claim of unilateral mistake). The purpose of these rules is to give the opposing party "notice of the issues raised and an opportunity to meet them." *Smith v. Grand Canyon Expeditions Co.*, 2003 UT 57, ¶ 12, 84 P.3d 1154

---

2.  Rule 8 of the Utah Rules of Civil Procedure was recently amended, "effective for cases filed on or after November 1, 2011." *See* Utah R. Civ. P. 8 amend. notes. This case was filed prior to November 1, 2011, so we rely on the pre-amendment version of the rule here.

(citation and internal quotation marks omitted). That purpose would not be served if a statement that a defendant asserts "any other matter constituting an avoidance or affirmative defense" were held to comply with these pleading requirements.[3]

¶15    GDE waived the affirmative defense of mutual mistake, and the trial court did not abuse its discretion by striking it and portions of the declaration supporting it.

### III. Release of Lien and Accord and Satisfaction

#### A. Release of Lien

¶16    The centerpiece of the trial court's ruling on summary judgment was that GDE had released all its liens on the property. The trial court ruled, "Pursuant to the Release of Lien, GDE has waived any and all rights to maintaining any lien upon the Property in connection with the Project." Because its liens were void, the trial court continued, GDE had no right to collect any amounts due relating to work or materials provided on the project by GDE or its subcontractors. The court specifically relied on language in the Release of Lien, signed under oath by Eldredge on behalf of GDE, stating that the first GDE lien "is hereby released, the claim having been fully paid and satisfied and that the Mechanics' Lien . . . is hereby satisfied and discharged."

¶17    GDE does not challenge this ruling. GDE's brief does not quote the ruling, state that it is incorrect, or otherwise refer to it. The brief's addendum contains no copies of the trial court's ruling or the Release of Lien. The brief does not quote or explain the language of release, which states that GDE's claim is "fully paid and satisfied" and consequently that its lien is "satisfied and discharged." Indeed, the argument portion of the brief never mentions the Release of Lien. We are thus not in a position to disturb the trial court's ruling on this point. *See* Utah R. App. P. 24(a)(9); *B.A.M. Development, LLC v. Salt Lake Cnty.*, 2012 UT 26, ¶ 35 n.8, 282 P.3d 41 ("We refuse to become [appellant's] advocate by formulating arguments on its behalf or translating its problematic

---

3.  GDE does not claim that the Leavitts failed to object when it raised the defense of mutual mistake for the first time in its memorandum opposing summary judgment. Nor does GDE claim that other facts in this case somehow establish that the Leavitts had adequate notice and an opportunity to respond despite GDE's failure to plead the defense. *Cf. Smith v. Grand Canyon Expeditions Co.*, 2003 UT 57, ¶ 12, 84 P.3d 1154.

arguments into plausible ones."). Accordingly, we assume the validity of the Release of Lien.

B. Accord and Satisfaction

¶18    GDE does challenge the trial court's secondary ruling, that "GDE and the Leavitts having reached an accord and satisfaction, GDE's remaining three claims . . . for breach of contract, quantum meruit/contract implied in fact, and quantum meruit/contract implied in law must be dismissed." Accord and satisfaction has three elements: "(1) a bona fide dispute over an unliquidated amount, (2) a payment made in full settlement of the entire dispute, and (3) an acceptance of the payment." *Smith*, 2003 UT 57, ¶ 13. GDE argues that "the undisputed facts of this case show that none of the three elements [of accord and satisfaction] were met." It directs its challenge principally to the second and third elements, asserting that "[t]he GDE Note served only to facilitate permanent financing and was never meant to be payment."[4]

¶19    In concluding that the promissory note constituted payment, the trial court relied on the Release of Lien. The court stated that "[a] promissory note serves as full payment of the original debt if the parties so agree." (Citing *Interstate Trust Co. v. Headlund*, 171 P. 515, 517–18 (Utah 1918).) As evidence of the parties' agreement, the court then quoted the following language from the Release of Lien, a document signed under oath by Eldredge on behalf of GDE in April 2008:

> PLEASE TAKE NOTICE THAT the Mechanics' Lien claimed by GDE . . . is hereby released, the claim having been fully paid and satisfied and that the Mechanics' Lien . . . is hereby satisfied and discharged.

---

4. GDE's briefing of the first element is limited to this sentence: "The amount at issue here is liquidated and undisputed." This assertion is nothing more than a general denial of the first element of the test. GDE does not cite the record in support of the assertion and provides no particulars, including whether the purportedly undisputed amount is the $140,000 claimed in the first notice of lien, the $150,000 claimed in the second notice of lien, or the $563,690.45 claimed in the third notice of lien.

Consequently, the court concluded, the Leavitts "made a payment in full settlement of the entire dispute when it provided to GDE the Promissory Note."

¶20 On appeal, GDE does not address the court's stated basis for its ruling. It focuses instead on the same facts alleged in Eldredge's June 2010 declaration, for example that "GDE did not expect the Leavitts to make payments pursuant to the Promissory Note but expected to be paid from the proceeds of the refinancing of the Leavitts' property." GDE makes no attempt to reconcile Eldredge's 2008 statement under oath that GDE's claim was "fully paid and satisfied" and her 2010 declaration stating that it was not.[5] The argument thus falls short of establishing that "the undisputed facts of this case" show that payment was never made.[6]

IV. Guaranties of Completion and Performance

¶21 GDE challenges the trial court's conclusion that two Guaranties of Completion and Performance signed by GDE are enforceable and support an award of attorney fees.

¶22 First, GDE argues that the subordination clauses in the Guaranties are unenforceable as a matter of law under the Utah Mechanics' Lien statute, *see* Utah Code Ann. § 38-1-29, -39 (LexisNexis 2005, Supp. 2006, & Supp. 2007),[7] and this court's

---

5. GDE's arguments leave the impression that, in its view, the Release of Lien was not intended to actually release the lien, but only to cause the take-out lender to believe that it had been released.

6. GDE does not claim that the discrepancy between Eldredge's lien release affidavit and her later declaration creates a genuine issue of material fact precluding summary judgment. In any event, a party may not, without explanation, avoid summary judgment by denying her own prior sworn statement. *See generally Webster v. Sill*, 675 P.2d 1170, 1172–73 (Utah 1983) ("[W]hen a party takes a clear position in a deposition, that is not modified on cross-examination, he may not thereafter raise an issue of fact by his own affidavit which contradicts his deposition, unless he can provide an explanation for the discrepancy.").

7. The Mechanics' Lien statute has been renamed as the Preconstruction and

(continued...)

opinion in *Olsen v. Chase,* 2011 UT App 181, 270 P.3d 538. We need not reach this issue, however, because the trial court did not enforce the subordination clauses of the Guaranties. The court ruled that the Release of Lien—not the Guaranties' subordination clauses—"unambiguously released" the first lien and "extinguished" the second and third liens. The trial court's ruling does not enforce or even mention the subordination clauses of the Guaranties. Accordingly, even if the clauses were unenforceable, that fact would not affect the trial court's ruling.

¶23 Second, GDE argues that the Guaranties are not binding because they "fail[] to meet even the most basic contract principles"; specifically, there is a "lack of consideration between the parties," and "the agreement is completely one-sided." However, GDE's brief contains no citations to authority, statutes, or parts of the record relied on as required by our appellate rules. *See generally* Utah R. App. P. 24(a)(9). Moreover, contrary to our rules, GDE's brief gives no indication that this issue was preserved in the trial court. *See* Utah R. App. P. 24(a)(5). We therefore do not consider it. *See State v. Lee*, 2006 UT 5, ¶ 22, 128 P.3d 1179 (stating that the court "may refuse, sua sponte, to consider inadequately briefed issues").

¶24 Third, GDE argues that "there are material disputes of fact which preclude granting [the Bank's] motion for summary judgment" on this issue. GDE's brief cursorily identifies a purported legal inconsistency "[u]nderlying [the Bank's] argument in many places," that is, that GDE is responsible to pay off other contractors but has no right to lien for their work. However, GDE's argument is bereft of any "citations to the authorities, statutes, and parts of the record relied on." *See* Utah R. App. P. 24(a)(9). Indeed, it is not apparent from its argument what "material disputes of fact" exist, that is, which statements of which witnesses purportedly conflict. Pinpointing where and how the trial court allegedly erred is the appellant's burden. "An appellate court that assumes that burden on behalf of an appellant 'distorts th[e] fundamental allocation of benefits and burdens.'" *Niemela v. Imperial Mfg., Inc.,* 2011 UT App 333, ¶ 24, 263 P.3d 1191 (alteration in original) (quoting *State v. Robison*, 2006 UT 65, ¶ 21, 147 P.3d 448). GDE has not met its burden here.

---

7. (...continued)
Construction Liens statute. We cite the versions of the statute in effect at the time each Guaranty was signed. The current version of the relevant provisions appears at Utah Code sections 38-1a-105 and -802 (LexisNexis Supp. 2012).

V. Attorney Fees on Appeal

¶25    Finally, the Bank seeks attorney fees on appeal. "The general rule is that when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Brown v. Richards*, 840 P.2d 143, 156 (Utah Ct. App. 1992). The Bank received attorney fees below, and it has prevailed on appeal. Accordingly, we award attorney fees and costs reasonably incurred on appeal to the Bank. We remand to the trial court to determine that amount.[8]

¶26    The judgment of the trial court is affirmed.

_____
J. Frederic Voros Jr., Judge

-----

¶27    WE CONCUR:

_____
Gregory K. Orme, Judge

_____
William A. Thorne Jr., Judge

---

8. The Leavitts also requested their attorney fees on appeal, but not until oral argument. Unlike the Bank, the Leavitts made no such request in their appellate brief. We accordingly deny the request. *See In re A.M.S.*, 2000 UT App 182, ¶ 22 n.2, 4 P.3d 95 (rejecting request for attorney fees and costs incurred below and on appeal because request was made for first time in oral argument).