2015 UT App 242

## THE UTAH COURT OF APPEALS

CLAYTON A. CHENEY; LORNA W. CHENEY;
AND FRONTIER BUILDING PRODUCTS, LLC,
Plaintiffs and Appellants,
*v.*
HINTON BURDICK HALL & SPILKER, PLLC,
Defendant and Appellee.

Opinion
No. 20140316-CA
Filed September 17, 2015

Fifth District Court, Cedar City Department
The Honorable James L. Shumate
No. 110500780

Joel T. Zenger and Deborah Chandler, Attorneys
for Appellants

Bryan J. Pattison and Elijah L. Milne, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGE
JOHN A. PEARCE concurred. JUDGE GREGORY K. ORME concurred
in the result.

TOOMEY, Judge:

¶1 This case involves a transaction known as a "1031 like-kind exchange," which allows a business or investment property to be sold for a profit and defer paying taxes on the gain as long as the profit is reinvested in a similar property. *See* I.R.C. § 1031 (2012). Here, Clayton A. Cheney, Lorna W. Cheney, and their business, Frontier Building Products, LLC (collectively, the Cheneys), contracted with an accounting firm, Hinton Burdick Hall & Spilker, PLLC (Hinton Burdick), to help them facilitate several like-kind exchanges. But after a seller failed to convey title to exchange properties, the Cheneys filed a suit against

Hinton Burdick, claiming breach of contract and a violation of the implied covenant of good faith and fair dealing. The district court subsequently granted Hinton Burdick's motion for summary judgment and dismissed the Cheneys' complaint.

¶2     On appeal, the Cheneys challenge the court's decision to grant summary judgment. They argue there was a dispute as to the material facts that precluded the court from granting summary judgment and that, as a matter of law, Hinton Burdick breached its duties under two agreements and breached the covenant of good faith and fair dealing when it accepted payment for exchanges without ensuring the Cheneys received title to exchange property. Because we conclude that the parties' agreements did not require Hinton Burdick to ensure the Cheneys received title to the exchange properties and that the Cheneys have failed to demonstrate that Hinton Burdick's actions violated the covenant of good faith and fair dealing, we affirm and remand for calculation of attorney fees incurred on appeal.

BACKGROUND

¶3     From August 2005 to January 2006, Hinton Burdick and the Cheneys entered into three nearly identical contracts (collectively, the Agreement) to facilitate like-kind exchanges. In the Agreement, the Cheneys recognized that, after their property was sold, Hinton Burdick "[would] be unable to deliver good and marketable title to the Exchange Property on the date designated for closing of this exchange transaction," and for the Cheneys' tax benefit, Hinton Burdick agreed to hold any gains in escrow until the Cheneys designated an exchange property to purchase with the funds.

¶4     In the first of these transactions, with an agreement in place, Mr. and Mrs. Cheney sold one of their properties and transferred the proceeds to Hinton Burdick. Mr. and Mrs.

Cheney decided to purchase an out-of-state renovated condominium complex owned by Homeland Mortgage. Based on correspondence with Homeland, Mr. and Mrs. Cheney assumed their investment would give them ownership in the exchange property. Hinton Burdick transferred funds to Homeland. Hinton Burdick did not convey title of the exchange property to Mr. and Mrs. Cheney but assumed, based on previous transactions, that the seller would convey title directly to Mr. and Mrs. Cheney. Although Mr. and Mrs. Cheney thought they were on the exchange property's title, Homeland never conveyed it to them. Instead, Mr. and Mrs. Cheney began receiving interest checks and correspondence addressed to Homeland's "shareholders" and "investors."

¶5      Several months later, Mr. and Mrs. Cheney entered into a second agreement with Hinton Burdick. Similar to the first exchange, Mr. and Mrs. Cheney sold another of their properties and Hinton Burdick held the proceeds in escrow. Mr. and Mrs. Cheney then designated a similar property, instructed Hinton Burdick to transfer the funds, and completed a real estate purchase agreement with the seller. The seller conveyed title to Mr. and Mrs. Cheney directly via warranty deed.

¶6      Finally, Frontier entered into an agreement with Hinton Burdick to facilitate a like-kind exchange wherein the proceeds from the sale of Frontier's property were designated to purchase out-of-state property owned by Homeland and oil well interests from NG Capital Corporation. Similar to Mr. and Mrs. Cheney's first exchange with Homeland, Hinton Burdick wired funds to Homeland but neither Hinton Burdick nor Frontier received title to property. Rather, Frontier received investor correspondence. Frontier also instructed Hinton Burdick to send some of its funds to NG Capital as an investment in an oil and gas well. NG Capital did not convey an interest in the well to Hinton Burdick but transferred an interest directly to Frontier.

¶7     After the Cheneys stopped receiving interest checks from Homeland, they asked for the return of the money they invested; it was not returned. They also discovered, with regard to the Homeland exchanges, they were not on the title to any property. The Cheneys then attempted to sue Homeland, but abandoned suit after discovering that Homeland's principal was in prison and the company had gone bankrupt.

¶8     Nearly six years after the exchanges, the Cheneys sued Hinton Burdick, alleging that it had breached the first and third contracts with regard to the Homeland exchanges by failing to convey title to the exchange properties. They also claimed Hinton Burdick breached the covenant of good faith and fair dealing by accepting payment for the exchanges and by not ensuring they received title from Homeland. Hinton Burdick moved for summary judgment arguing that, when read in its entirety, the Agreement showed Hinton Burdick must first have received title to an exchange property before it had an obligation to deliver title to the Cheneys. Hinton Burdick also argued it did nothing intentional to interfere with the Agreement, and thus did not violate the covenant of good faith and fair dealing. The district court granted Hinton Burdick's motion, concluding that "interpretation of the contract is as . . . urged upon the court by [Hinton Burdick] in this action." The Cheneys appeal.

ANALYSIS

¶9     "A district court's grant of summary judgment is a legal ruling that we review without deference." *Suarez v. Grand County*, 2012 UT 72, ¶ 18, 296 P.3d 688 (citation and internal quotation marks omitted). It is proper only when "viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Id.* (omission in original) (citation and internal quotation marks omitted).

## I. The Court Did Not Err in Concluding There Was No Dispute as to the Material Facts.

¶10   The Cheneys contend "there were disputed issues of material fact on the record." They do not, however, dispute any of the facts; they merely dispute whether the law, when applied to the facts, supports judgment in favor of Hinton Burdick. For example, the Cheneys suggest that the differing interpretations of the Agreement create "disputed facts" that should have been allowed to go to trial. Because they do not identify disputed facts in the record, the Cheneys have not met their burden on appeal.[1] "Pinpointing where and how the trial court allegedly erred is the appellant's burden. An appellate court that assumes that burden on behalf of an appellant distorts th[e] fundamental allocation of benefits and burdens." *GDE Constr., Inc. v. Leavitt*, 2012 UT App 298, ¶ 24, 294 P.3d 567 (alteration in original) (citation and internal quotation marks omitted). Accordingly, we conclude the court did not err in determining there was no dispute as to the material facts.

## II. The Court Did Not Err in Concluding Hinton Burdick Was Entitled To Judgment as a Matter of Law.

### A.   Breach of Contract

¶11   The Cheneys contend "[t]he plain and clear language of the [Agreement], when harmonized with all other provisions, demonstrates that [Hinton Burdick] had a contractual obligation

---

1. We acknowledge that the Cheneys' appellate briefs refer to a couple of facts in the record—each regarding Hinton Burdick's awareness of peculiarities in the closing paperwork—but they expressly concede those facts are undisputed. Moreover, in their reply brief, the Cheneys state, "Although [we] do believe that there are factual disputes as to the facts as asserted by [Hinton Burdick], [we] are not making this appeal on those grounds."

to ensure that the property had been conveyed either to [itself], or directly to [the Cheneys] prior to wiring the purchase funds."[2] They assert that transferring the funds was "expressly contingent upon the contemporaneous receipt of title by either [Hinton Burdick] or [the Cheneys]." The Cheneys also argue Hinton Burdick had a duty to inform them that "the subject transactions would not result in [their] acquisition of real property."

¶12 When interpreting a contract, such as the Agreement, we "'first look[] to the contract's four corners to determine the parties' intentions, which are controlling. If the language within the four corners of the contract is unambiguous . . . [we] determine[] the parties' intentions from the plain meaning of the contractual language as a matter of law.'" *Baxter v. Saunders Outdoor Advert., Inc.*, 2007 UT App 340, ¶ 11, 171 P.3d 469 (alterations and omission in original) (footnote omitted) (quoting *Fairbourn Commercial, Inc. v. American Hous. Partners, Inc.*, 2004 UT 54, ¶ 10, 94 P.3d 292).

¶13 The Cheneys' argument is based on the language of two specific provisions in the Agreement, which provide:

> [4]B. The closing of the purchase wherein [the Cheneys] acquire[] the Exchange Property shall be contingent upon the contemporaneous conveyance of such property by the owner to [Hinton Burdick] or may be conveyed directly to [the Cheneys], so long as [Hinton Burdick] executes all other papers required in that closing;

---

2. We note that although the Cheneys disagree with Hinton Burdick's interpretation of the Agreement, they do not argue that the Agreement is ambiguous.

> [4]C. [Hinton Burdick] shall convey the Exchange Property to [the Cheneys] by Special Warranty Deed, warranting only against the acts of [Hinton Burdick] and shall convey any personal property related thereto to [the Cheneys] by Bill of Sale without warranties.

Looking at the two provisions together, the Agreement makes whether the Cheneys receive the exchange property dependent upon a contemporaneous conveyance of the property from the seller. The Agreement then provides that the Cheneys may receive title to the exchange property in one of two ways. And it dictates the type of deed Hinton Burdick must convey to the Cheneys, if necessary. In either scenario—whether a title is first conveyed to Hinton Burdick and then conveyed to the Cheneys or whether a title is conveyed directly to the Cheneys—the seller would first have to produce title of the exchange property. No provision in the Agreement requires Hinton Burdick to make the seller produce title to the exchange property, and without receiving the exchange property's title, Hinton Burdick would be incapable of conveying a special warranty deed to the Cheneys under section 4C. Accordingly, section 4B creates a condition precedent to Hinton Burdick's duty to convey title to the Cheneys: the seller's conveyance of the exchange property. Thus, based on the plain language of the Agreement and the undisputed facts, Hinton Burdick's duty to convey title was never triggered because Homeland never conveyed a title.

¶14    Although the Cheneys assert that Hinton Burdick "was contractually obligated to ensure that the property had been conveyed directly to [the Cheneys] prior to wiring the purchase funds," no language in the Agreement restricts when Hinton Burdick may transfer funds. Rather, the Agreement provides, "On receipt of written instructions [from the Cheneys] which have been approved by [Hinton Burdick] at any time before the [acquisition of the exchange property, Hinton Burdick] shall

apply the Escrowed Funds . . . toward the purchase of the Exchange Property." This provision expressly allowed Hinton Burdick to purchase the exchange property before the Cheneys received title.

¶15    More importantly, the Agreement expressly provides that the Cheneys may not hold Hinton Burdick responsible for any problems with the transfer of the exchange property. In executing the Agreement, the Cheneys acknowledged "[their] reliance upon [their] own tax and legal counsel as to [their] exchange transaction involved in th[e] Agreement." This provision rebuts any claim that Hinton Burdick had a duty to advise them of the risks in the transaction. And the Agreement provides that

> [the Cheneys] shall indemnify and hold harmless [Hinton Burdick] from any or all claims, liabilities, costs and expenses, including legal fees, in connection with and arising out of the acquisition of the Exchange Property and the contemporaneous transfer of the Exchange Property to [the Cheneys].

¶16    Although the Agreement is not a model of clarity, the only reasonable interpretation of the plain language is that Hinton Burdick's role in the transaction was to accommodate a like-kind exchange for the Cheneys' convenience. The Agreement does not have any language compelling Hinton Burdick to guarantee the seller's conveyance of title to the exchange property, and its disclaimers and indemnification provision expressly contradict any assertion that Hinton Burdick had some duty to advise the Cheneys of potential risks in their investments. Accordingly, we conclude the court did not err in granting summary judgment, because Hinton Burdick was entitled to judgment as a matter of law.

B.      Breach of the Covenant of Good Faith and Fair Dealing

¶17    The Cheneys contend Hinton Burdick violated the implied covenant of good faith and fair dealing when it "accepted payments for its services under the contract[] . . . [but] failed to perform all required services and acquire real properties on behalf of [the Cheneys]." The implied covenant of good faith and fair dealing inheres in most contractual relationships and requires a party in a contract to perform "consistent with the agreed common purpose and the justified expectations of the other party." *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 43, 104 P.3d 1226 (citation and internal quotation marks omitted). This is recognized "where it is clear from the parties' 'course of dealings' or a settled custom or usage of trade that the parties undoubtedly would have agreed to the covenant if they had considered and addressed it." *Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 10, 266 P.3d 814 (quoting *Oakwood Vill.*, 2004 UT 101, ¶ 43). One such duty is an "implied duty that contracting parties 'refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract.'" *Id.* ¶ 9 (quoting *Oakwood Vill.*, 2004 UT 101, ¶ 43).

¶18    Although compliance with this covenant is fact sensitive and depends on the contract and conduct between the parties, *see Republic Group, Inc. v. Won-Door Corp.*, 883 P.2d 285, 291 (Utah Ct. App. 1994), the Cheneys fail to meet their burden of persuasion on appeal. While they cite a few cases that involve the covenant of good faith and fair dealing, their briefs contain mere conclusory arguments that do nothing more than restate the legal standard without an analysis demonstrating how Hinton Burdick's actions violated the implied covenant. For example, the Cheneys assert that "[a]ccepting payment in exchange for the performance of the duties while wholly failing to perform [Hinton Burdick's] express contractual obligations is clearly an intentional interference [with the Cheneys'] right[] to

receive the fruits of the contracts." This argument merely restates their breach of contract claim without explaining which obligations Hinton Burdick has failed to perform or how its actions were an intentional effort to interfere with the Cheneys' exchanges. Thus, without a reasoned analysis, the Cheneys have not convinced us that the court erred in granting Hinton Burdick's summary judgment motion on this issue. *See* Utah R. App. P. 24(a)(9) (requiring an appellant's argument to contain "contentions and reasons of the appellant with respect to the issues presented").

III.  Hinton Burdick Is Entitled to Attorney Fees on Appeal.

¶19   Hinton Burdick requests an award of attorney fees incurred on appeal. "In Utah, attorney fees are awardable only if authorized by statute or contract." *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988); *see also R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 17, 40 P.3d 1119. And, "when a party is entitled to attorney fees below and prevails on appeal, that party is 'also entitled to fees reasonably incurred on appeal.'" *Dillon v. Southern Mgmt. Corp. Ret. Tr.*, 2014 UT 14, ¶ 61, 326 P.3d 656 (quoting *Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998)); *see also R.T. Nielson Co.*, 2002 UT 11, ¶ 27 (awarding costs and attorney fees to the prevailing party on appeal based on the parties' agreement). Here, the Agreement authorizes attorney fees to the prevailing party; it states, "In the event any action is instituted by a party to enforce any of the provisions contained herein, the prevailing party shall be entitled to reasonable attorney's fees, costs and expenses . . . ." Relying on this provision, the district court properly awarded Hinton Burdick attorney fees below. Hinton Burdick has also prevailed on appeal. Accordingly, we award Hinton Burdick reasonable attorney fees on appeal and remand to the district court for calculation of those fees.

CONCLUSION

¶20    Based on the plain language of the Agreement, the district court did not err in concluding as a matter of law that Hinton Burdick did not breach any contractual duty. Moreover, the Cheneys have failed to carry their burden to demonstrate Hinton Burdick breached the implied covenant of good faith and fair dealing. We therefore affirm the court's decision to grant Hinton Burdick's summary judgment motion and remand for the calculation and an award of attorney fees incurred on appeal.

—————